263 So.2d 677

**HUFFMAN–EAST DEVELOPMENT COR-
PORATION and Ross Tortorigi**

v.

**SUMMERS ELECTRIC SUPPLY
COMPANY, Inc.**

6 Div. 854.

Supreme Court of Alabama.

June 15, 1972.

Barber, Johnston & Holmes, Birmingham, for appellants.

Charles L. Denaburg, Birmingham, for appellee.

**HEFLIN, Chief Justice.**

Appellants-respondents, Huffman-East Development Corporation and Ross Tortorigi appeal from decrees establishing a statutory materialmen's lien in favor of appellee-complainant Summers Electric Company on an apartment building known as "Florentine Villa". The bill of complaint averred that the apartment building was owned by Huffman-East Development Corporation and Ross Tortorigi. The president and major stockholder of said corporation was Ross Tortorigi.

The suit originally involved two other respondents who are not parties to this appeal. The first was American National Bank of Jacksonville, which held a construction loan mortgage on the real property upon which the apartment building was built. The other respondent was Glenn W. Claburn, individually and doing business as Claburn Electric Company (herein referred to as "Claburn"). Claburn entered into a contract with appellant-respondent Tortorigi, whereby Claburn was to furnish and install the electrical work on the apartment building. Appellee-complainant Summers Electric Company supplied Claburn with some of the materials necessary for the performance of this contract, which it contends remained unpaid. Claburn, before the completion of his contract, abandoned his work and subsequently filed a voluntary petition in bankruptcy.

On February 4, 1970 appellee-complainant Summers Electric Company notified appellants that it claimed a lien upon the property for the materials furnished. Said lien was duly filed on April 3, 1970.

Following the evidence heard ore tenus before the trial judge, a final decree was entered on September 1, 1970. On November 3, 1970 this decree was altered by an order modifying the final decree and denying application for rehearing. The final decree was again modified on November 11, 1970 by a decree of modification.

The final decree, as modified by the decrees of modification, in substance: (1) found Claburn had substantially performed his contract, (2) awarded a money judgment in favor of appellee against Claburn for $5,469.58, (3) established a mechanics' and materialmen's lien on the subject property and improvements thereon in favor of appellee subject to the construction loan mortgage of American National Bank of Jacksonville and (4) ordered the Register to sell the property and improvements thereon if the money judgment remained unpaid for a period of time in excess of thirty days, but subject to the mortgage held by said bank. The proceeds of said sale were to go to satisfy the lien.

From these decrees appellants-respondents Huffman-East Development Corporation and Ross Tortorigi appeal.

Appellants insist that the bill of complaint was defective in that the appellee failed to allege when it commenced work, or furnished its first materials. Without such date, the appellants argue no determination or priority of lien can be made under Section 38 of Title 33, Code of Alabama, 1940. Other than appellee's lien, the only other lien, encumbrance or mortgage on appellants' property was the mortgage held by the American National Bank of Jacksonville. This mortgage was declared superior to appellee's lien by the November 11, 1970 decree of modification. In view of this fact and since the question of priority did not affect the relief sought against the appellants, any error in overruling appellants' demurrers was not reversible as there was no injury to appellants. Smith & Garey v. Awbrey, 19 Ala. 63; Coastal States Life Ins. Co. v. Gass, 278 Ala. 656, 180 So.2d 255.

During the trial appellants sought to introduce a group of cancelled checks made payable to Mayer Electric Supply Co., Inc. or Lighting & Lamp Wholesalers, Inc. for the avowed purpose of showing that the owners had expended monies to complete Claburn's work. Appellee objected on the grounds that no showing was made that the checks represented payments for materials used on the "Florentine Villa" job and that the checks were issued subsequent to notification of appellee's lien claim. The trial court sustained the objection, saying that the checks had not been "tied in with this job".

Appellants assert that if the original contractor fails to complete the job, the owner can use any amount unpaid by him to such original contractor to complete the job. While cases have held that the liens of laborers and materialmen who have furnished their labor and supplies are subordinate to the right of the owners to complete the job by the use of such balance (See Cranford Mercantile Co. v. Wells, 195 Ala. 251, 70 So. 666; Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 129 So. 285), it was, nevertheless, incumbent upon the appellants in offering the checks to sufficiently identify them by showing their connection with the particular job. Appellants contend that a portion of the work completed by Claburn was not done in a proper workmanlike manner and was defective. Appellants further contend that all of the underground aluminum wiring (including the underground wiring for the yard lights and pool lights) had to be replaced and that the replacement wiring was purchased from Mayer Electric Supply Company and Lighting & Lamp Wholesalers. However, no witness ever identified the checks as representing payments for any aluminum wire replacements or for any purpose in connection with Florentine Villa. While there was testimony that the accountant had the records to substantiate payment to Mayer Electric Supply Company and Lighting & Lamp Wholesalers, no one ever identified the proffered checks as payment for the replacement aluminum wire or connected them in any way with the work done at Florentine Villa.

It is interesting to note that after the court announced the reason why it was sustaining the objections to the admission of these checks, Mr. Tortorigi was recalled to the stand for the purpose of identifying invoices or bills that would substantiate these checks. However, during this recall testimony Mr. Tortorigi did not identify or substantiate the checks as being given as payments for the completion of Claburn's job or connect them with Florentine Villa in any way; nor did he identify any supportive invoices or bills.

Appellants argue they are not liable on the contract price or on a quantum meruit for extra work performed because Claburn left the job prior to completion of his contract.

The trial court found, and the evidence supported the conclusion, that Claburn substantially performed his contract. If the work done substantially conforms to the contract, immaterial deviations will not prevent recovery of the contract price, less

the amount required to indemnify for injuries sustained by such deviations. Wilson v. Williams, 257 Ala. 445, 59 So.2d 616; Miles v. Moore, 262 Ala. 441, 79 So.2d 432.

Evidence of extra work performed by Claburn in connection with his contract was introduced for the purpose of determining the balance due from the appellants to Claburn. Claburn was also entitled to payment for the extra work performed in a workmanlike manner at appellants' request in addition to that required by his contract though he did not entirely complete his original contract. Bonie v. Griffin, 252 Ala. 299, 40 So.2d 870.

[6] The extra work performed by Claburn was at the request of the appellants. The work and labor and material furnished thereto became a part of the permanent improvement of the apartment building and enhanced the value of the appellants' property. Where one knowingly accepts services rendered by another and a benefit results, the law implies the promise to pay a reasonable value. Shirley v. McNeal, 272 Ala. 696, 133 So.2d 873.

Admittedly, the testimony reflects instances where the extra work performed by Claburn was done in a defective and unacceptable manner. For such work no benefit was received and the appellants would not be liable on a quantum meruit basis. It appears, however, that this circumstance was recognized by the trial judge and such work was not considered in his final decree.

The appellants further contend that the trial court erred in failing to include in its final decree a determination of the amount of the unpaid balance due Claburn from Huffman-East Development Corp. and Ross Tortorigi at the time notice of the lien was served upon the owners by appellee. However, the appellants have not cited a case in support of their position, nor has this Court located such a case.

In pertinent parts, § 37 of Title 33 of the Code of Alabama, 1940, and § 46 of Title 33 of the Code of Alabama, 1940,

when construed together provide that laborers and materialmen under contract with the subcontractor, as well as those with the original contractor, are entitled to have a lien on the building and land and on the unpaid balance due the original contractor by the owner at the time the lien is claimed and notice given under said § 46, provided such lien shall not exceed the amount of the balance then unpaid. Crane Company v. Sheraton Apartments, Inc., 257 Ala. 332, 58 So.2d 614.

While it would be a good practice for the trial judge in his final decree to make a determination of the balance due from the owner at the time notice of the lien is received, the failure of the trial judge to do so is not reversible error. In Tisdale v. Alabama & Georgia Lumber Co., 131 Ala. 456, 31 So. 729, Alabama & Georgia Lumber Co. sought to enforce a statutory lien against the property of owner W. H. Tisdale for material furnished to contractor Fred Moesser. Involved in the issues tried before a jury was the question of the unpaid balance owing from the owner Tisdale to the contractor Moesser. The verdict returned by the jury was as follows:

"We, the jury, find for the plaintiffs, and assess the damages at $395.58. We, further, find that the plaintiffs have a lien on the property described in the complaint, and that W. H. Tisdale [owner] was due the contractor, Moesser, . . . . . , [no amount stated] and do, hereby condemn the said property for the payment thereof." (131 Ala. at 461, 31 So. at 730).

This Court held that the above verdict was insufficient to support the judgment because the verdict contained a blank space where the amount of the unpaid balance owing to the contractor from the owner should have been inserted and, therefore, it was indefinite and doubtful.

However, the Court in postulating a situation analogous to the instant case said:

"If the verdict of the jury, after finding and assessing the amount of plain-

tiff's damages, had stopped with the finding of a lien on the property described in the complaint, there would be ground for saying that the intention of the jury was to find against Tisdale [owner] for the amount so assessed, and would have been sufficiently definite to support a judgment against Tisdale." (131 Ala. at 461, 31 So. at 730).

■ From the appellee's evidence the trial court could have concluded that Huffman-East Development Corporation and Ross Tortorigi owed Claburn the sum of ·$8,722.00. There was testimony from Claburn that it would cost $1,000.00 to finish the uncompleted portion of his work on the apartment project. Thus, there was evidence before the trial court from which it could have found that the unpaid balance due from the appellants to Claburn was $7,722.00.

There was considerable dispute concerning whether or not Claburn had satisfactorily completed certain items of his work as well as a wide variance of testimony concerning the cost to complete the many and varied items of work. It appears that the trial court in fixing a lien on appellants' property in the amount of $5,469.58 acted within the range of the testimony concerning the unpaid balance due and considered the proper credits that it felt were due the owners. Where there is credible evidence supporting the decree of the trial court, it will not be disturbed on appeal. Tyra v. Burns, 279 Ala. 84, 181 So.2d 899.

The appellants contend that the following language of § 46 of Title 33 of the Code of Alabama, 1940, makes it imperative for the trial court to make a determination of the amount of money *in the hands of the owner* at the time notice of the lien is received by the owner:

" . . . [A]nd after such notice, any unpaid balance in the hands of the owner or proprietor shall be held subject to such lien."

This Court cannot agree with this contention for it considers that this language is concerned with the applicability and enforceability of the lien and is not to be interpreted as requiring a determination by the trial court of the amount *in the hands of the owner* at the time of receipt of the notice.

Any error committed by the trial court in declaring appellee's lien superior to the mortgage held by the American National Bank of Jacksonville in its first two decrees was eliminated by the November 11, 1970 decree of modification which declared the mortgage superior to any interest of the appellee.

■ All other instances of reversible error are dependent on a holding by this Court that the trial court was clearly and palpably wrong in its evaluation of the evidence pertaining to offsets and credits. It cannot be so held. It was stated by Justice Lawson in Adams Supply Co. v. United States Fidelity & Guaranty Co., 269 Ala. 171, 111 So.2d 906:

"For emphasis, we refer to the favorable presumption of correctness attending the trial court's conclusion on issues of fact where the evidence is taken in the presence of tehe court. Under such circumstances we will not disturb the trial court's conclusion on issues of fact unless palpably erroneous and against the great weight of the evidence; and it is not necessarily what view the appellate court might have of the evidence, but if under any reasonable aspect the decree below is fairly supported by credible evidence, it is our duty to affirm." (269 Ala. at 176, 111 So.2d at 911).

The evidence surrounding the amount of credits and offsets was in sharp dispute and has been previously discussed. There was credible evidence which would fairly support the decree. In keeping with the above stated presumption it is our duty to affirm the judgment of the trial court.

Affirmed.

COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur.