266 So.2d 855

**J. B. CRUM and Joseph V. Armstrong**

v.

**John C. McGHEE.**

**3 Div. 510.**

Supreme Court of Alabama.

Sept. 21, 1972.

William Hamilton, Greenville, Pitts, Pitts & Thompson, Selma, for appellee.

Poole & Poole, Greenville, Miller & Hoffmann, Montgomery, for appellants.

BLOODWORTH, Justice.

This case was assigned to another justice on original submission. It has been reassigned to the writer for preparation of an opinion for the court.

Defendants appeal from a judgment for plaintiff and from a judgment overruling their motion for new trial.

The complaint claims $50,000 damages for personal injuries arising out of a collision on May 25, 1970 on Gates Road, a public highway in Lowndes County, between plaintiff's 1968 Chevrolet pickup truck and defendant Crum's International tractor truck and trailer being driven by his employee, defendant Armstrong. The complaint is in two counts. Count One alleges negligence, and Count Two alleges wantonness. The jury returned a verdict for the amount sued for.

According to the evidence, Gates Road runs east and west and is 22 feet wide. It is a dirt road. There is only one set of ruts or tracks down the middle of the road, although from our inspection of the pictures of the road, it appears to be wide enough to accommodate two vehicles. There is a wooden bridge or culvert located just to the east of the place where the accident occurred. The bridge is 16½ feet wide and 15½ feet long and is single lane. From the west, Gates Road leads downhill to the bridge. The road also leads downhill to the bridge from the east. The hill to the west of the bridge is the longest. The hill to the east is the steepest. Thus, the bridge is located at the bottom of the two hills. The road is clay on the east side of the bridge and sand on the west side. From halfway down one hill, the evidence is that one can see halfway up the other hill.

Plaintiff's pickup truck was 7 feet wide and 15 feet long. Defendant's tractor was 8 feet wide, 16 to 18 feet long, with 2 axles and equipped with 6 tires, 2 tires on the front axle and 4 on the rear. The trailer was 20 to 24 feet long. It had only

1 axle and dual tires. The total length of tractor and trailer was 40 feet. The tractor was equipped with air brakes, operated by a foot pedal. there was no hand brake control. The tandem trailer was a so-called "Lo-boy trailer," a homemade job, and was not equipped with any brakes.

The plaintiff was traveling west on Gates Road downhill approaching the bridge. The road was straight. Defendant Armstrong was traveling east on Gates Road downhill also approaching the bridge. There is a curve in Gates Road on the hill down which defendant Armstrong was driving. Each driver was alone in his vehicle. Plaintiff was traveling about 30 or 35 miles per hour as he approached the bridge. He slowed down just before he got to it. When he got on the bridge he saw the truck and said he tried to get out of the way. When he crossed over the bridge, he turned to his right, or north, to try to get out of the way, he said, but was struck just in front of the left door by the left side of the tractor bumper. Plaintiff's pickup truck was knocked off the road on the north side about 25 feet west of the bridge. It came to rest on its right side in the ditch. Plaintiff was knocked unconscious, but came to as defendant Armstrong was helping him out of his truck. Later, he was taken by ambulance to St. Margaret's Hospital in Montgomery. The tractor trailer jackknifed in the road and came to rest on the north side of the road and west of the bridge, but closer to it than the pickup.

According to defendant Armstrong, he was returning in defendant Crum's International tractor truck, with Lo-boy trailer attached, from the woods where he had unloaded a tractor for defendant Crum's lumber operation. He had never been on Gates Road before. He was going to his home at McKenzie, Alabama. He was traveling at 30 to 35 miles per hour as he started downhill approaching the bridge. At one point, he said he first saw plaintiff's pickup truck just as plaintiff topped the hill. At another point he said he first saw plaintiff when he was halfway down the hill. He continued to observe plaintiff until plaintiff got to the bridge. He could not say how fast plaintiff was going, but it seemed to him that plaintiff was gaining speed as he came down the hill. When he first saw plaintiff, he (Armstrong) was driving in the middle of the road and started putting on his tractor brakes. Armstrong said the road surface was sand and gravel mixed, that it shifted, had no foundation, and that his tires locked and he began to slide. He then released his brakes to reapply them "and the gravel just kept going, and I just couldn't stop the truck." He says that his left front fender was about the middle of the road just before the collision. He testified that the collision caused his tractor trailer to jackknife. He was not injured in the wreck. He ran to the plaintiff's truck to see how badly plaintiff was hurt, found he was injured, and helped him out. He then went for help.

Armstrong testified that the trailer had no brakes—that defendant Crum had built the trailer himself. He denied the trailer tires slid, but insisted only the tractor tires did. He admitted the plaintiff was still coming down the hill when he put on brakes, slid on the sand and gravel, and saw that his truck brakes "wasn't going to hold." He says he was still going 15 miles per hour when the collision occurred.

### I.

The first contention made by defendants pertains to their claim that the proof failed to sustain the allegation that Gates Road was a "public highway" and that no duty arose not to negligently injure plaintiff, since it must be assumed Gates Road was a private road. There are two answers to this contention.

■ First, there was proof from the testimony of defendant Armstrong himself that Gates Road was a "county road." There were other references throughout the testimony to "Gates Road" or the

"road." The testimony was that traffic usually travels in the set of ruts—"that's where everybody travels." Pictures show it to be a well kept dirt and gravel road. Whether this was sufficient direct evidence to show Gates Road was a public road or not, it appears to us to be sufficient from which the jury might infer this fact. In Smith v. Clemmons, 216 Ala. 52, 54, 112 So. 442, 443 (1927), this court said, viz:

"* * * There was no evidence directed expressly to the point that the 'Bridge road' was a public road, by which appellant means, as we suppose, a road maintained at the public expense, or perhaps, a road which the public were entitled to travel without let or hindrance, but the evidence showed that the accident in which plaintiff's mare was injured occurred on the 'Bridge road,' in Lauderdale county, a road which all the parties were using at the time as a detour from the 'Jackson highway' and from this evidence it was open to the jury to infer that it was a road at the time in common use and so a public road as alleged in some of the counts of the complaint."

■ Second, this alleged omission was not called to the trial court's attention, as required by Rule 35, Rules of Practice in the Circuit and Inferior Courts of Common Law Jurisdiction, Title 7, Appendix, Code of Alabama 1940. As a matter of fact, defendants did not ask for the general affirmative charge except as to Count Two (wantonness).

The case of Aplin v. Dean, 231 Ala. 320, 323, 164 So. 737, 739 (1935), is precisely in point, viz:

"There is no merit in defendant's eighth assignment of error. The evidence was sufficient to authorize the jury to find that the accident occurred upon a public highway in Baldwin county, within a half mile of Stockton; that this public highway ran through Stockton to Bay-Minette. One of the witnesses called it the Stockton-Tensaw highway. At most, the omission of proof, in this respect, presented only a question of variance, capable of being supplied by further evidence identifying the highway. The variance, if any in fact, was not called to the trial court's attention, and the court will not be put in error for refusing to give the general affirmative charge for defendant based upon this supposed variance. Rule 35."

## II.

The next contention made by defendants is that the verdict was contrary to the great weight of the evidence—because it shows that defendant Armstrong was not guilty of either negligence or wantonness, and plaintiff was guilty of contributory negligence. We cannot agree.

■ When a trial judge (as here) refuses to grant a new trial sought on grounds, inter alia, that the verdict is contrary to the great weight of the evidence, or not sustained by the preponderance of the evidence, this court has said no grounds of the motion are more carefully scrutinized. Furthermore, verdicts are presumed correct, and this presumption is strengthened when a new trial is denied by the trial judge. On appeal, our court must review those tendencies of the evidence most favorable to the plaintiff allowing for those inferences which the jury was free to draw. Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391 (1961); 15A Ala.Dig., New Trial, ☞72, 2A Ala.Dig., Appeal & Error, ☞930(1). And, this court has long held that we will not reverse unless "the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cobb v. Malone, 92 Ala. 630, 635, 9 So. 738, 740 (1891).

We have reviewed the evidence in this case and, after indulging all the presumptions in favor of the verdict and the trial court's ruling, we must conclude that the preponderance of the evidence against the

verdict is not so decided as to clearly convince us that the verdict is wrong and unjust.

■ Taking the tendencies of the evidence most favorable to plaintiff, the jury was authorized to conclude that defendant Armstrong: (1) knew he was driving a heavy tractor trailer and homemade Lo-boy trailer attached; (2) knew he had no brakes on the trailer; (3) knew the tractor trailer was 8 feet wide and 40 feet long; (4) knew the plaintiff was descending the other hill towards the bridge picking up speed and would likely reach and cross the bridge first; (5) knew there was only one set of ruts or tracks; (6) knew the sand and gravel surface of the road caused his wheels to slide when brakes were applied; (7) knew therefore he could not stop the truck and trailer; nevertheless, in spite of such knowledge, and with conscious disregard of the likelihood of injury to others, continued to drive at 30 to 35 miles per hour on a strange road, keeping in the middle of the road, hit plaintiff on the left side of plaintiff's vehicle in front of the left door, causing the tractor trailer to jackknife in the road, and plaintiff's vehicle to be knocked in the ditch on the north side of the road, all some 25 feet west of the bridge. We might add we think the jury could also have concluded that defendant Armstrong could have turned to the right and avoided colliding with plaintiff altogether had he had his vehicle under control. It is obvious we consider these tendencies of the evidence to be sufficient under both counts.

A quite similar case on the issue of wantonness, which sustains our conclusion, is Daniel v. Motes, 228 Ala. 454, 455, 153 So. 727, 728 (1934), in which this court held, viz:

"Stating the rule applicable to a case of this character, we hold that if A drives his car down the center of the road, and meets B, driving his car well on his side of the road, and A, in violation of the law of the road, refuses to turn to the right, and keeps straight ahead with the view of forcing B still further out on his side for fear of a collision, but B continues in the zone he has the right to be, and thus a collision becomes so imminent that it is too late for A to turn to the right and avoid it, A may be guilty of a wanton wrong. Though he may not intend a collision, if he knowingly and wrongfully brings on a condition of danger, taking a chance on the other fellow giving way to his wrongful course, until too late for preventive effort, such conduct has all the elements of a wanton act.

"Whether B would be guilty of contributory negligence is, of course, not involved in considering a wanton count.

"Considering the whole evidence, the question of wantonness was one for the jury. * * *"

III.

The next contention defendants make is that the verdict was excessive. We quote their argument, viz:

"As pointed out in the statement of facts, the appellee was a black man residing in Lowndes County, and he had nine strikes in selecting the jury, the first eight of which were exercised in striking the eight white members of the jury panel. The striking of the jury resulted in an all black jury. The appellants were both white males and did not reside in Lowndes County. After the case was submitted to the jury, the jury stayed out less than 45 minutes and returned a verdict in the amount of $50,000, the exact amount sued for.

"In the instant case, the appellee had special damages in the amount of $4,309, short-term suffering, and no permanent disability and complete recovery. On this evidence as presented in this case, it is inconceivable that a jury verdict in the exact amount sued for ($50,000) could have resulted from anything other than bias, passion, partiality or mistake."

We agree with plaintiff's reply to this argument, viz:

"* * * There is no evidence that there was any abuse by the jury of its discretion nor is there any evidence that the power of the jury was exercised in passion. To the contrary, there is the Affidavit of the formen [sic] of the jury which establishes that the jury did not exercise any prejudice or passion in returning the verdict. * * *"

■ The mere fact alone, without more, that the jury returned a verdict in the exact amount sued for is not, of itself, evidence of prejudice, passion, partiality or corruption so as to authorize our finding that the verdict is excessive.

In the instant case, the plaintiff had "special damages" totalling $4,309. He was knocked unconscious, carried to the hospital where he remained for 17 days, part of this period being in intensive care. His doctor testified it was questionable at first as to whether he would live or die. He had seven broken ribs; he had a great deal of blood and air in the chest cavity; one lung was collapsed; he developed a blood clot in the lung; he suffered numerous cuts and bruises on arms and head, the cuts requiring suturing; a tube was placed in his lung cavity for drainage. He was off work for five months. His rate of pay at a Montgomery lumber yard, before the accident, was $98 per week. Afterwards, he was employed at $48 per week. Plaintiff testified he could not do heavy work at the time of the trial in April, 1971 nor do any heavy lifting or climbing.

■ The verdict rendered by the jury was a general verdict. The complaint contained counts in negligence and wantonness. Of course, it needs no citation of authority to support the principle that the amount of damages is largely discretionary with the jury, particularly, the amount of punitive damages.

■ This court has long held that the power of the court to disturb the verdict of the jury on the ground of excessiveness is to be exercised with great caution. Vest v. Gay, 275 Ala. 286, 154 So.2d 297 (1963). We are not willing to exercise that power in this case, being unconvinced that the defendants have shown the verdict to be excessive.

### IV.

The final contention made is that the trial court erred in refusing to give, at the request of defendants, the following two written charges, to-writ:

"D–4. The Court charges the jury that if you believe the evidence in this case, then you cannot find for the plaintiff under Count Two of the Complaint."

"D–5. The Court charges the jury that if you believe the evidence in this case, then you must find for the defendants under Count Two of the Complaint."

We think we have already sufficiently answered this contention, having concluded that the issue of wantonness was properly submitted to the jury.

■ Moreover, there was no error in refusing to give Charge D–5 since it was not in proper form.

In General Finance Corporation v. Bradwell, 279 Ala. 437, 440, 186 So.2d 150, 153 (1966), the trial court gave the following charge, viz:

" 'I charge you, Gentlemen of the jury, that if you believe the evidence in this case you will find for the defendant as to Count Three of plaintiff's complaint.' "

This court held:

"The quoted charge is not in proper form and could have been refused without error. If there had been but one count in the complaint, the form would be proper but since there was more than one count the form was incorrect under

a long line of our cases. We quote from *Dollar v. McKinney,* 267 Ala. 627, 103 So.2d 785, as follows:

"'It has long been settled by our decisions that where a complaint contains several counts, special requested written charges which direct the jury if they believe the evidence they should find for the defendant on one or the other of said counts, are properly refused. (Citing cases)'"

Having thus concluded there is no reversible error in any of the contentions made by defendants (appellants), the judgments of the trial court are due to be affirmed.

We take this opportunity to commend both sides for their very excellent briefs. The briefs were of considerable benefit to the court in reaching its decision.

Affirmed.

HEFLIN, C. J., and COLEMAN, McCALL and SOMERVILLE, JJ., concur.