320 So.2d 657

**C. F. HALSTEAD CONTRACTOR, INC.,**
a corporation

**v.**

**DIRT, INC., a corporation.**

**SC 1085.**

Supreme Court of Alabama.

Aug. 21, 1975.

Rehearing Denied Oct. 2, 1975.

Crenshaw & Minor, Montgomery, for appellant.

Thomas A. Deas, Mobile, for appellee.

BLOODWORTH, Justice.

This appeal involves the respective rights and obligations of a contractor and his subcontractor under a contract for the preparation of a construction site. Appellant contractor (defendant below) appeals from a judgment rendered on a jury verdict for the full amount sued for by appellee subcontractor (plaintiff below).

Appellant, C. F. Halstead Contractor, Inc., is a general contractor who contracted to build a warehouse and building for Lowe's Department Stores on Dauphin Street in Mobile. Appellee, Dirt, Inc., is a site contractor. Halstead negotiated a subcontract with Dirt under which Dirt was to install the site work for the project. Dirt agreed to remove unsuitable soil from the site (referred to as "undercutting"), to haul in sufficient dirt (referred to as "backfill") to achieve the compaction necessary for construction, and to render other services necessary for the preparation of the construction site.

The parties initially considered contracting on a "unit price" basis. However, after determining that an "undercut" of one foot and a "backfill" of two feet should be sufficient, the parties finally contracted on a "cost-plus" basis with the compensation to Dirt to equal the amount of Dirt's cost on the job plus a profit in the amount of 15 percent of the cost, but with the total compensation not to exceed $50,000.00. The written contract stated that Dirt was to "[f]urnish all labor, materials, and equipment necessary to install the site work" and specified that the work to be performed was to include, but not to be limited to, an undercut of one foot.

After the work had commenced, the subcontractor, Dirt, discovered a spot where the soil was soft, requiring an undercut deeper than the one foot originally contemplated. Harrison, president of Dirt, informed Tatum, president of Halstead, of the necessity of a deeper undercut. Tatum authorized Harrison to undercut to whatever extent was necessary. It is from this authorization that the instant controversy has arisen.

Dirt contends that Tatum's authorization of a deeper undercut constitutes a modification of the contract from its original "cost-plus" basis and that Dirt is entitled to additional compensation for the additional undercutting and backfill. Halstead contends that the authorization did not amount to a modification, that the additional work fell within the terms of the original "cost-plus" contract, and that no additional compensation was ever authorized.

Dirt's substantiation of its cost consists solely of its records as to the number of truckloads of undercut and fill dirt which were hauled; Halstead contends that such records are relevant only in "unit price" contracting. Halstead maintains that one performing services under a "cost-plus" contract is under a duty to keep accurate, detailed records of actual expenses and is not entitled to compensation in the absence of such records.

At trial, the testimony clearly established the fact that an additional undercut was performed. However, the testimony was in conflict as to the quantity of additional dirt removed and the quantity of additional dirt used as backfill. Dirt's records of the number of truckloads of dirt removed and added were at variance with the calculations of Dirt's expert witness. On the basis of measurements taken by "borings" at the site, the expert, a registered engineer, calculated the additional work to be significantly less than the amount of additional work reflected by Dirt's records. (This conflict is largely due to a difference in the methods of apportionment between what was necessary to achieve the undercut of one foot and the additional undercut.) Halstead argues that, if the cost of the amount of the additional work computed under the expert's calculations were billed on the basis of Dirt's usual "unit price," the additional cost would total only $3,903.10. Under the calculations based on its own records of truckloads, Dirt claimed

$11,800.00 for the additional work. The jury awarded the full amount sued for. Halstead contends that the jury award is excessive.

In short, this appeal presents three basic issues for review: 1. whether there was sufficient evidence upon which the jury could find that Tatum's authorization of additional undercut constituted a modification of the original contract; 2. whether a subcontractor who claims compensation under a "cost-plus" contract is entitled to payment in the absence of an itemization of its costs; 3. whether the jury's verdict was excessive because it exceeded the amount testified to by the subcontractor's expert witness and because it was rendered in the exact amount sued for.

1. On the issue as to whether there was sufficient evidence to find a modification of the original contract, Halstead cites *Badders & Britt v. Davis,* 88 Ala. 367, 6 So. 834 (1889) for the proposition, viz.:

"* * * If he [defendant-owner] made no promise to pay, then the presumption arises that the alterations were agreed to be made, and were made, without extra charge."

Halstead argues that there was no express promise to pay in the instant case, therefore the presumption is that the additional work was performed without extra charge and that there was no effective modification of the contract.

We think the answer to this assertion lies in this Court's holding in *Bonie v. Griffin,* 252 Ala. 299, 40 So.2d 870 (1949) where the Court said:

"* * * It is no objection that no written contract or order covered these [additional] items, if the additional work was mutually agreed upon by the parties or done under circumstances implying mutual assent. * * *"

Even more recently, we held in *Huffman-East Development Corporation v.*

*Summers Electric Supply Company,* 288 Ala. 579, 263 So.2d 677 (1972):

"[6] The extra work performed by Claburn was at the request of the appellants. The work and labor and material furnished thereto became a part of the permanent improvement of the apartment building and enhanced the value of the appellants' property. Where one knowingly accepts services rendered by another and a benefit results, the law implies the promise to pay a reasonable value. *Shirley v. McNeal,* 272 Ala. 696, 133 So.2d 873."

Looking to the evidence in the case at bar, we find that Harrison (Dirt's president) testified as follows at trial:

"[W]e called Mr. Tatum [Halstead's president] long distance at Montgomery; and I talked to him to start with and told him what we were confronted with, and he asked me what my recommendation was. I told him that it looked to me like we were going to have to go six inches or more deeper to turn out a good job."

\*    \*    \*    \*    \*    \*

"Mr. Tatum told me, said, 'Lamar, if you feel like that is what you have got to do to do it, do it, but just don't go to the extreme with it.' * * *"

\*    \*    \*    \*    \*    \*

"[O]n the way back to the job, I asked Mr. Tillman [Halstead's superintendent] about that [getting written authorization]. And, his words was this, he said, 'The man told you to do it, do it. They are a good company to work for and he will do what he says he will do.'"

As we have already indicated, this Court in *Bonie v. Griffin,* stated that a written contract could be orally modified "if the additional work was mutually agreed upon by the parties or done under circumstances implying mutual assent." 252 Ala. at 300, 40 So.2d at 872.

Here, the jury could have found Tatum's consent to a modification to be implied

from the circumstances, and the jury could conclude that Harrison's purpose in seeking the authorization was to insure that, for any additional services rendered, the subcontractor would receive additional compensation. The jury could also infer that Tatum recognized Harrison's request for authorization as impliedly including a request for the authorization of additional compensation.

In cases such as the present one, "[w]here, on appeal, the sufficiency of the evidence to support the verdict is at issue, only those tendencies of the evidence most favorable to the verdict are reviewed; and such inferences as the jury were free to draw are indulged." *W. T. Ratliff Company, Inc. v. Purvis,* 292 Ala. 171, 178, 291 So.2d 289, 294 (1974). We cannot say that the jury's verdict is not supported by the evidence.

2. Halstead further maintains that one who claims compensation under a "cost-plus" contract is entitled to payment only upon a showing of actual cost. It is undisputed that the subcontractor's only showing of cost consists of its records of the number of truckloads of dirt transported. Although such proof may not be the most desirable means of establishing cost, we are unwilling to hold, as a matter of law, that the jury was not justified in finding such records to be sufficient to substantiate the subcontractor's cost. In other words, we think the probative value of such proof is for the jury.

3. Finally, Halstead contends that the jury verdict was excessive. Dirt's expert witness testified that his measurements showed that 1,606 cubic yards of additional "undercut" was made and that 1,946.03 yards of "backfill" was brought in. Halstead maintains that, on the basis of Dirt's usual prices, this additional work would be billed at $3,903.10. However, Dirt's bill was for $11,800.00, based on the number of truckloads of dirt involved.

Of course, the testimony of expert witnesses is not binding on the jury unless the subject is one exclusively within the knowledge of experts. *Union Central Life Insurance Company v. Scott,* 286 Ala. 10, 236 So.2d 328 (1970); *Commonwealth Life Ins. Co. v. Harmon,* 228 Ala. 377, 153 So. 755 (1934).

Although the expert's testimony varied from that of Dirt's president, Harrison, the latter himself was an experienced site contractor whose testimony the jury could reasonably regard as persuasive. The mere fact that the jury found Harrison's testimony to be more credible than the testimony of the expert does not, of itself, indicate that the jury's verdict was excessive.

Halstead makes a final contention that, since the jury returned a verdict in the exact amount sued for, this, of itself, indicates that the verdict was the result of "bias, passion, and prejudice." We cannot agree. We have heretofore held that the mere fact the jury returned a verdict in the exact amount sued for is not of itself evidence of bias, passion, or prejudice. *Crum v. McGhee,* 289 Ala. 244, 266 So.2d 855 (1972).

Having disposed of the issues raised on this appeal favorably to appellee, it is unnecessary that we consider the appellee's several motions to affirm.

Affirmed.

HEFLIN, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.

## On Rehearing

BLOODWORTH, Justice.

In brief supporting application for rehearing, appellant Halstead insists that our original opinion is in error in four particulars:

"1. Failure to construe the written contract.

"2. Holding that authority to do necessary undercut changed a cost-plus contract to a unit price contract.

"3. Holding that as a matter of law proof of quantity fulfills the duty of a cost-plus contractor to keep accurate cost records.

"4. Permitting to stand, as not excessive, a verdict substantially greater than that justified under the uncontradicted testimony of the Plaintiff's own expert witness."

We think we have sufficiently answered contentions 2–4 in our original opinion, at least to our satisfaction.

With respect to contention 1, it is argued that we have tacitly approved construction of a written contract by the jury, contrary to the rule of our decisions. We think not.

 It is, of course, fundamental in our law that it is the duty of the court and not the jury to "analyze and determine the meaning of a contract * * * *when its terms are clear and certain, and also* [to] ascertain whether or not it is ambiguous * * *." *Air Conditioning Engineers. v. Small,* 259 Ala. 171, 176, 65 So.2d 698, 703 (1953) [Emphasis ours].

When, however, its terms are doubtful of meaning or the language is ambiguous, the pre-contract negotiations and conduct of the parties may be looked to by the jury as an aid in interpreting the contract. *Air Conditioning Engineers v. Small,* supra, where this Court held:

"* * * if it [the contract] is found to be ambiguous, but not void for uncertainty, its meaning may be clarified by a consideration of the facts and circumstances *aliunde* and *in pais,* and when so it is the province of the jury to ascertain those facts and draw inferences from them which carries to the jury the whole issue upon proper instructions by the court."

We think the terms of the contract in question here fall within the ambit of the rule of *Air Conditioning Engineers v. Small,* supra, and the issues here were properly submitted to the jury.

Opinion extended.

Application for rehearing overruled.

HEFLIN, C. J., and FAULKNER, ALMON and EMBRY, JJ., concur.