EDWARD N. SCRUGGS, Retired Circuit Judge.
Langdon sued Romano and Business Systems and Consultants, Inc. (B.S.C.) for unpaid sales commissions. The trial court rendered judgment favorable to Romano, and there is no present contention that Romano is liable to Langdon. This appeal is by Langdon from his $919.47 judgment against B.S.C. as being inadequate in amount.
Romano, Langdon and most of the other employees of B.S.C. had previously been in the employ of Sperry-Rand (Sperry) when it determined to dealerize its direct operations. In June, 1976, Romano incorporated B.S.C. and B.S.C. became the Sperry franchise owner in the Birmingham area. Langdon became a salesman for B.S.C. In addition to selling within his territory, a salesman apparently bore the responsibility, at least in part, of installing and servicing of B.S.C. sold equipment and systems.
Their written employment contract dated September 20, 1976, was executed by both parties. It provided for the payment of commissions to Langdon based upon his sales to B.S.C.’s customers and contained a provision whereby the plan of compensation was “subject to the policies, regulations and determinations of the Company from time to time.”
There is evidence that one of the policies of the business machine industry, of Sperry and of B.S.C., since its incorporation, was that, when a salesman was terminated, he would receive only limited commissions. That policy was reduced to writing by Romano, as president of B.S.C., by issuing on January 3,1977, a supplement to their sales contract, which memo was directed to their sales force consisting of Langdon and two other salesmen. The written supplement provided, in pertinent part:
In the event a Sales Representative leaves the Company’s employ for any reason whatsoever, after a valid sales order has been written but before any part of the order is billed and installed 25% only of any commissions due will be credited to the Sales Representative who obtained the order and wrote the specifications. Part of the remaining commission may be credited to the succeeding Sales Representative assigned to the account, as compensation for satisfactory installation and service follow through at the request of the President....
The reasons for this policy were explained by Whitt, a fellow B.S.C. salesman:
Well, in our business a salesman has a territory. And, for instance, when one salesman leaves, the business — well, then another salesman has to go in and do things in that salesman’s territory as far as installing equipment and systems and whatever the case might be that he would be responsible for....
Langdon left his employment at B.S.C. on May 23, 1977, and, as to the present issues, periodically was paid the reduced commissions pursuant to the supplement; however, he did not complain about the amount of his commissions, object to them or even discuss it with B.S.C. He testified that he had never been notified of any such change in his commissions in the event of the termination of his employment, that he was un *38 aware of and had never been informed of such policy, and that he had never seen the supplement while working at B.S.C. Romano’s evidence was that he personally informed Langdon of the supplement and discussed it with him and that Langdon had probably received in some instances the 75% of the sales commission when he replaced a terminated salesman. Romano stated that he handed a copy of the supplement to Langdon on or about its date. Langdon at no time registered any protest as to the supplement.
The gist of the trial question was whether Langdon was entitled to a stipulated sum as his full commission or to the amount of $919.47 if the supplement was determined to be valid. The effect of the judgment was to uphold the supplement.
The quoted provision from the initial employment contract expressly made the compensation plan subject to company policy “from time to time.” That was adequate authorization to make the supplement binding.
Even without that 1976 contract proviso, the evidence was otherwise sufficient to indicate that the supplement was expressly or impliedly agreed to by the parties, and its prospective application as to Langdon and B.S.C., in the event of his future termination of employment, gave it validity without further consideration other than such mutuality. 5 Ala.Digest, Contracts key nos. 237 and 238. The written employment contract as to commissions was subject to being mutually altered, and it is not required that any such change be signed by Langdon and B.S.C., or either of them, since such an agreement does not fall within the statute of frauds. Tilley v. Bartow, 8 Ala.App. 639, 62 So. 330 (1913); § 8-9-2, Code of Ala. 1975.
On appeal, we must review only those tendencies of the evidence which are most favorable to the findings and judgment of the trial court. C. F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, 320 So.2d 657 (1975). In Langdon’s brief, the following appears:
The testimony between Langdon and Romano was substantially in conflict. Romano testified that the agreement was known by all the salesmen and a copy was given to each and every one. Lang-don testified that the first time he had seen the notice was at his attorney’s office after suit was filed for his commission and that he never knew anything about the modification.
Langdon’s testimony disagrees with the modification and expresses no knowledge of it. Romano’s testimony upholds the modification and Whitt’s testimony, who is an interested party and employee of B.S.C., of course, upholds the modification ....
Admittedly, there is conflict in the evidence. Credible evidence, and reasonable inferences therefrom, support the findings of the trial court. We, therefore, presume the circuit court’s judgment to be correct and must leave it undisturbed unless it is palpably wrong. 2A Ala.Digest, Appeal & Error key nos. 931(1), 1009(1) and (2).
We find no error.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975 and it is hereby adopted as that of the court.
AFFIRMED.
All the judges concur.