This appeal arises from a suit by a materialman to enforce a lien against the *Page 540 
"unpaid balance" due the original contractor by a homeowner.[1] Following nonjury proceedings, the trial court awarded judgment for the materialman. We affirm.
 Facts
On September 6, 1985, Jimmy R. Justice and Kathryn H. Justice, husband and wife, entered into a contract with a builder, Bobby Albright, to construct a dwelling house on their property situated in Morgan County, Alabama. The contract price was $67,000 and it provided that Albright was to furnish all labor and materials. All carpet, light fixtures, and wallcovering, and the intercom and other appliances were to be purchased by the Justices at no expense to Albright. Under the terms of the contract, the house was to be completed within 100 days of groundbreaking. The contract further provided that Albright was to receive payment through a series of five disbursements, which were listed in a schedule set forth in the contract.
To finance a portion of the construction price, the Justices on October 1, 1985, obtained a construction loan from United Tennessee Savings and Loan Association. The loan was secured by a mortgage on their land and the house that was to be constructed thereon. The proceeds of this loan were to be placed in a bank account ("construction account") and then disbursed to Albright by United Tennessee Savings and Loan and the Justices according to the disbursement schedule.
Construction commenced on or around October 1, 1985. Subsequent thereto, Albright received three disbursements as provided for under the terms of the contract: $11,000 on December 17, 1985; $15,000 on January 13, 1986; and $16,000 on February 10, 1986.[2] As of February 10, 1986, Albright had thus received a total of $42,000 of the total contract price of $67,000. The disbursements were made after the lender's representative and Jimmy Justice had inspected the premises and found Albright's work to be satisfactory.
As of March 20, 1987, the house had not been completed. Counsel for the Justices sent a letter to Albright pointing out that the house had not been completed according to the specifications of the contract and demanding adequate assurance that the house would be completed within 15 days. The letter was accompanied by a "punchlist" of work that remained unfinished. Albright failed to respond to the letter.[3]
Acting upon advice of counsel, the Justices notified United Tennessee Savings and Loan that Albright was in default and they subsequently made arrangements with other workmen to complete the house. As of February 10, 1986, the date of the last disbursement to Albright, there remained in the construction account $23,000. Between March 8, 1986, and March 11, 1986, the Justices moved into the partially completed house.
In early April 1986, Jack Hamilton, general manager of Arab Lumber and Supply, Inc. ("Arab Lumber"), contacted Kathryn Justice. He informed her that Arab Lumber had not been paid for materials that had been purchased on credit by Albright to construct the house and requested that *Page 541 
no further payments be made to Albright by the Justices. Arab Lumber had given no advance notice to the Justices that it was furnishing construction materials to Albright to be used in construction of the home.[4] The total price for assorted materials furnished to Albright on credit by Arab Lumber was $21,790.59. Kathryn Justice indicated that no further checks would be presented to Albright until suppliers and materialmen had been paid.
Jimmy Justice, in a conversation with Jack Hamilton in March or April 1986, stated that it was his intention to finish construction of the house but that upon completion Arab Lumber would be entitled to any funds remaining in the construction account.[5] Arab Lumber maintains that it continued to furnish on credit materials for use in the construction of the Justices' house.
As indicated, the Justices retained other workmen to complete the house after Albright stopped working on the project. The Justices made payments from the construction account to various individuals and companies and also reimbursed themselves in the amount of $1,686.10 for materials and labor that they personally had furnished.[6] All of the work on the house was performed, according to the Justices, in accordance with the original contract specifications. They nonetheless maintained that at the time the funds in the construction account were nearly exhausted, the house was not completely finished according to specifications. The Justices then offered $2,000 remaining in the account to Arab Lumber in satisfaction of its claim for materials and supplies. The offer was refused.
On June 27, 1986, Arab Lumber sent notice to the Justices of its intention to file a lien for materials and supplies against their house for the unpaid account totaling $25,002.80.[7] On July 16, 1986, a verified statement of lien was filed by Arab Lumber against the Justices' property and against any unpaid balance due the contractor (Albright).
On August 14, 1986, Arab Lumber filed the instant suit against the Justices, Bobby Albright, and the lender, United Tennessee Savings and Loan, for the unpaid balance of the account. The complaint alleged separate counts, seeking recovery under the following theories: a materialman's lien against the Justices' real estate; breach of an expressed or implied contract between Arab Lumber and the Justices for payment for the materials supplied in the construction of their house; fraud and/or deceit by the Justices in representing to Arab Lumber that it would be paid for all or for a substantial portion of the materials furnished; and a quantum meruit claim for goods furnished by Arab Lumber to the Justices or for their benefit.
Prior to trial, Bobby Albright received a discharge in bankruptcy of the debt owed to Arab Lumber. On September 11, 1986, United Tennessee Savings and Loan filed an answer maintaining that its mortgage was a first and paramount lien against the property that was the subject of the pending action and was therefore superior to any right, title, and interest claimed by Arab Lumber.
The Justices filed an answer to the complaint, denying any and all liability. United Tennessee Savings and Loan (presently known as United Federal Savings Bank) filed a motion for summary judgment, *Page 542 
alleging that its mortgage lien upon the real estate was superior and prior in all respects to any mechanic's lien found to exist in favor of Arab Lumber. The motion was granted, and judgment was entered in favor of United Federal Savings Bank on June 9, 1987.
The case was tried to the court, without a jury, on June 9 and 10, 1987. On July 2, 1987, the trial court entered judgment for Arab Lumber and made the following written findings:
 "The court finds from the evidence that the contract price for the construction of the house was $67,000.00; that the contractor had been paid $42,000.00 at the time he left the job; that the contract was ninety percent (90%) complete at that time; and that the contractor was due to be paid an additional $18,300.00 ($67,000 x 90% — $42,000.00).
 "The court finds further that at the time the contractor quit the job, he owed for labor and material the sum of $33,921.57, of which $21,790.59 was owed to plaintiff and the balance owed to various other suppliers. The plaintiff's amount of $21,790.79 was 64% of the total amount owed to suppliers by the contractor at the time he quit the job. The court finds therefore that the plaintiff was due to be paid from the amount owing the contractor the sum of $11,712.00, being 64% of $18,300.00.
 "Judgment is hereby entered for the plaintiff and against the defendant Jimmy R. Justice and Kathryn H. Justice in the amount of $11,712.00 plus interest at the legal rate from April 5, 198[6].
 "It is further ordered that the plaintiff have a lien for the amount of $11,712.00 on the real estate of the defendants Justice as described in the complaint, subject to the first mortgage on the property; the lien is hereby ordered affixed.
 "It is further ordered that the plaintiff have and recover from the defendant Bobby Albright the sum of $21,890.57 (which amount includes the amount of the judgment against the defendants Justice).
 "Costs of this proceeding are taxed to the defendants Justice, for which execution may issue.
 "ORDERED and DONE on this the 2nd day of July, 1987."
 "/S/ RUDOLPH W. SLATE "CIRCUIT JUDGE"
The Justices appealed.
 I
The Justices contend that the finding of the trial court that the house was 90% complete at the time the contractor quit work is unsupported by the evidence, erroneous, and due to be reversed. Such a finding was, of course, germane to the disposition of this case at trial, because in order to determine the unpaid balance owed the contractor, Albright, the trial court necessarily had to first determine the percentage of completion at the time Albright stopped working.
It is well settled that where a trial court bases its judgment upon findings of fact in a nonjury case in which the evidence is presented ore tenus, that judgment is reviewed on appeal with a presumption of correctness. Gray v. Reynolds,514 So.2d 973 (Ala. 1987); Stiles v. Brown, 380 So.2d 792 (Ala. 1980); M.D. Pharmaceutical, Inc. v. Mitchell, 510 So.2d 827
(Ala.Civ.App. 1987). Moreover, in conjunction with this rule, the findings of a trial court will not be disturbed on appeal unless the record shows the evidence to be so unsupportive of the judgment as to make it plainly erroneous, palpably incorrect, or manifestly unjust. Gaston v. Ames, 514 So.2d 877
(Ala. 1987); Sims v. Sims, 502 So.2d 722 (Ala. 1987); Goza v.Goza, 470 So.2d 1262 (Ala.Civ.App. 1985). Where the evidence before the trial court is undisputed, however, the ore tenus
rule is inapplicable and the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts.Stiles v. Brown, supra; Abel v. Forrest Realty, Inc.,484 So.2d 1069 (Ala. 1986); Stinson v. Stinson, 494 So.2d 435
(Ala.Civ.App. 1986). The Justices maintain that the evidence of the degree of completion of the house at the time the *Page 543 
contractor quit the job was not disputed, and that there was no conflicting evidence presented, and, therefore, that this Court should not indulge in any presumption in favor of the correctness of the trial court's finding on the issue of the completion of the house. We disagree.
At trial, Jimmy Justice testified that the house was 70-80% complete when the third construction loan disbursement was made to Albright on February 10, 1986. (R. 16). In additional testimony, he maintained that the house was still only 70-80% complete a month later when the Justices moved into the house between March 8 and March 11, 1986. (R. 141). As Jimmy Justice further testified, however, Albright continued to work on the house and grounds from February 10, 1986, to March 11, 1986. (R. 17).[8] This testimony gives rise to an inconsistency: Jimmy Justice acknowledges that Albright continued to work on the house from February 10, 1986, to March 11, 1986, a period of 30 days; but at the same time he maintains that the house on March 11, after a period of 30 more days of work, was no closer to being finished than it was on February 10.
The trial court thus may have reasonably concluded that Albright performed more work toward completion of the house than Jimmy Justice indicated in his testimony. Where testimony is taken in proceedings conducted ore tenus, the weight and credibility accorded that testimony is to be determined by the trial court. Meyer v. Meyer, 375 So.2d 799 (Ala.Civ.App. 1979); Snow v. Snow, 393 So.2d 1020 (Ala.Civ.App. 1981). And our review with a presumption of correctness of the trial court's judgment, which is conjunctive with the ore tenus
standard, is still applicable, notwithstanding a finding by the trial court that is contrary to the oral testimony presented at trial. Hall v. Mazzone, 486 So.2d 408 (Ala. 1986). As this Court has explicitly indicated:
 "The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses. In this case, the trial court observed one witness testify concerning this issue and made a determination of credibility. The fact that this determination was negative does not entitle us to ignore it. The fact remains that the trial court, having heard the testimony of one witness, is in a better position to resolve conflicting evidence than are we who must rely solely on written documents. Therefore, we accord the trial court's finding a presumption of accuracy, and we examine the record only to determine if that finding was clearly erroneous."
Id., 486 So.2d at 410, 411. (Emphasis original.) Based on the trial court's apparent reservation about the credibility of Jimmy Justice's testimony, as well as the inference of inconsistent assertions arising therefrom, the court may have correctly found that the house was completed anywhere within the range of 70% to 90% at the time Albright quit working.[9] That Arab Lumber offered no opposing evidence on this issue is immaterial. Moreover, *Page 544 
there are other inconsistencies in the testimony of Jimmy Justice that support the finding of the trial court. Under cross-examination, Jimmy Justice replied affirmatively when asked if Albright had "complied substantially" with the house plans before he stopped work. (R. 136). He also testified that only "little things" remained to be finished or corrected at the time of Albright's discharge. (R. 136).
Viewing the trial court's finding with a presumption of correctness, we have carefully examined the record and find that the judgment as to this issue is supported by the evidence and is not plainly erroneous, palpably incorrect, or manifestly unjust.
 II
The Justices next contend that the trial court made no deduction from the unpaid balance for amounts they expended to complete construction of the house. The record in this case, however, shows otherwise.
The undisputed evidence at trial showed that the Justices paid Albright $42,000 under a construction contract that specified a $67,000 price. Finding that he had completed 90% of his contractual undertaking, the trial court concluded that Albright had earned the additional amount of $18,300 (or 90% of $67,000, less the $42,000 already paid). The court then calculated that Albright owed the total sum of $33,921.57 for labor and materials furnished by his subcontractors both before and after his contract terminated. Albright owed Arab Lumber $21,790.59, or 64% of this total. The trial court accordingly entered judgment in favor of Arab Lumber for $11,712.00, that amount being 64% of the balance unpaid to Albright by the Justices. The Justices also argue that the trial court failed to subordinate Arab Lumber's lien to their right to complete their construction contract by use of the balance unpaid to the contractor, Albright. Again, this contention is unsupported by the record.
Based on its finding that Albright completed only 90% of the construction contract, the trial court immediately deducted $6,700 from the $25,000 unpaid balance due to Albright. The court then deducted another $6,588, representing a 36% pro rata reduction for claims (other than the one asserted by Arab Lumber) that had been left unpaid by Albright. The trial court then decreased the unpaid balance by 53%, or the sum of $13,288, leaving the remainder of the unpaid balance available to the Justices. Instead of awarding Arab Lumber the full amount of its claim, the trial court thus subordinated Arab Lumber's claim to the Justices' right to use the $13,288 to complete construction and to pay the materialmen who had been engaged by Albright.
In support of their contention that the trial court failed to subordinate Arab Lumber's lien to their right to complete the construction contract by use of the unpaid balance, the Justices assert that a homeowner may use any amount unpaid to the original contractor to furnish labor and materials to complete the job in the event the contractor fails to do so. As a general proposition, the decisions of this Court are in accord with that view:
 "It is settled that the owner can use any amount unpaid by him to his original contractor in furnishing labor and material to complete the job in event such original contractor shall fail to do so. In such event the lien of other laborers and materialmen who had furnished their labor and supplies to the contractor are subordinated to this right of the owner to complete the job by the use of such balance."
Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 525,129 So. 285, 290 (1930), citing with approval, Cranford Mercantile Co.v. Wells, 195 Ala. 251, 70 So. 666 (1916); Butler v. Hawk,221 Ala. 347, 128 So. 451 (1930). Accord, Huffman-East Devel. Corp.v. Summers Electric Sup. Co., 288 Ala. 579, 263 So.2d 677
(1972). It does not necessarily follow, however, that a homeowner may apply the unpaid balance to *Page 545 
expenditures for materials that are not contemplated in the construction contract and specifications. Indeed, as clearly indicated in each of the above-cited authorities, the expenditures by a homeowner from the unpaid balance must be for labor and materials necessary to complete the job according tothe original contract.
The expenditures by the Justices from the unpaid balance subsequent to Albright's default included the following: $6,000 for the purchase and installation of special rock for the exterior walls; $760 for the purchase of garage door openers; $454 for additional insulation; $425 for miscellaneous work; $1,516.90 for plumbing and electrical work; and a $1,686.10 payment to themselves for out-of-pocket expenses. From April 5, 1986, to May 8, 1986, a total of $22,997.98 was disbursed by the Justices from the unpaid balance of the construction account. Although it did not explicitly so indicate, the trial court apparently concluded that the payments itemized above, totaling $10,842.00, were not payments for work left uncompleted by Albright. These expenditures were not directly connected with the contract and were not required to indemnify the owner for the contractor's deviation from their agreement. Where a trial court does not make specific findings of fact, the reviewing appellate court will assume that the trial court made those findings that are necessary to support its judgment, unless those findings are clearly erroneous or against the great weight of the evidence. Davis v. Weatherington,514 So.2d 943 (Ala. 1987).
Such a conclusion is supported by the record in this case. We have reviewed the contract specifications and description of materials and find that neither the special exterior rock nor the garage door openers are included in the contract. Although the "punchlist" sent to Albright on March 20, 1986, by counsel for the Justices makes reference to "rock laid around foundation — front and sides," there is no indication that the rock is contemplated by the description of materials in the contract. As to the remaining payments, including the disbursement to themselves, the Justices apparently proffered no evidence to show that the labor or materials were required under the contract with Albright. In a suit by a materialman to establish a statutory materialman's lien, it is incumbent upon the homeowner who seeks to establish that expenditures of the "unpaid balance" have been used to complete construction, to show the connection of those expenditures with the particular job. Huffman-East Devel. Corp., supra.
 III
Finally, the Justices contend that the trial court's finding that there existed an unpaid balance due from the Justices to Albright at the time Arab Lumber gave written notice of its intent to claim a lien, is unsupported by the evidence and is plainly and palpably erroneous. We disagree.
The argument advanced by the Justices is that although $25,000 remained unpaid to the original contractor (Albright), none of it was due to him because the Justices had expended $25,451.88 to complete the home. Thus, they say, nothing remained in the construction account with which to pay Arab Lumber, and, because no unpaid balance was due to Albright, no lien could attach.
Such a contention presupposes, however, that the Justices were entitled to spend $25,451.88 to complete the house. As indicated in our treatment of the second issue presented in this appeal, supra, we will assume that the trial court found that the Justices impermissibly deducted from the unpaid balance payments that were not required in order to complete the contract or to correct deviations from it.
 Conclusion
The record on appeal shows numerous conflicts and inconsistencies in the evidence as to Albright's percentage of completion and the necessity of expenditures made by the Justices from the "unpaid balance" to finish the job. The trial court heard testimony ore tenus and personally observed the demeanor of the witnesses testifying. We accord the trial court's evidentiary conclusions a presumption of correctness, and we find, after a careful review of the record, that those conclusions are not palpably erroneous or manifestly unjust. The judgment will therefore not be disturbed. *Page 546 
We would also observe that in Alabama an action for the enforcement of a statutory materialman's lien is in the nature of an equitable remedy. Hancock v. Taylor, 246 Ala. 521,21 So.2d 308 (1945). In this case, two conflicting interests were presented for reconciliation by the trial court: the right of the Justices to use the unpaid balance to obtain labor and materials to complete construction of their house following the contractor's default; and, pursuant to the materialman's lien statute, the right of Arab Lumber to receive just compensation for materials it furnished to construct the Justices' house. In the end, the trial court rendered a judgment that did not fully compensate either party but balanced the equities between them.
Based on the foregoing, the judgment of the trial court as to all of the issues herein addressed is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] "Unpaid balance," as contemplated by the materialman's lien statute (Ala. Code 1975, § 35-11-20), means the unpaid balance used in the context of referring to the unpaid balance that the original contractor owes the subcontractor or supplier.Abell-Howe Co. v. Industrial Development Bd. of City ofIrondale, 392 So.2d 221 (Ala.Civ.App. 1980).
[2] According to the schedule, each disbursement, or "draw," would coincide with a specified stage of completion: the first draw would be disbursed when the house was 15% complete; the second draw, when the house was completed by another 30%; the third draw, when the house was completed by another 35%; and the fifth and sixth draws, respectively, when the house was completed by an additional 10%.
[3] Although Albright did not formally respond, the evidence at trial indicated that his father and other employees returned to the house at least twice prior to expiration of the deadline. On the first occasion, Albright's father, who had come to put up some sheetrock, was told not to perform any work until Bobby Albright contacted the Justices' attorney, whose name was indicated on a business card that was then presented. On the second occasion, two workers were directed to leave because they were allegedly drinking on the job.
[4] Ala. Code 1975, § 35-11-20.
[5] At trial, the dates of this initial conversation and other conversations were disputed, with Hamilton maintaining that they occurred in March rather than in April. Arab Lumber asserted that Jimmy Justice, in subsequent conversations with Hamilton, represented that there would be substantial funds remaining in the construction account to pay Arab Lumber. Hamilton testified that he was told on one occasion by Jimmy Justice that Arab Lumber would receive $15,000 to $16,000. According to Hamilton, this figure was reduced to $10,000 in a later conversation. Arab Lumber was ultimately offered $2,000 in settlement of the account.
[6] This does not represent the full amount that the Justices assert they expended to finish the home, exclusive of the funds on hand in the construction account, as it is maintained that they spent well over $2,800.
[7] Ala. Code 1975, § 35-11-218.
[8] Kathryn Justice, likewise, testified, and photographs were introduced into evidence that purported to represent the stage of completion at the time Albright quit working.
[9] Arab Lumber, moreover, urges that the trial court's conclusion is supported by an extrajudicial admission that was acknowledged by counsel for the Justices in a pleading submitted to the court. In a memorandum brief filed by counsel for the Justices for consideration by the court, the following sentence appears under the heading "Statement of Facts":
 "The Justices moved into their new home on or about March 9, 1986. Mr. Justice testified in deposition that the home was ninety (90%) percent complete, although much of the work and materials had not been paid for." The deposition here referred to was not, however, available at trial for use as evidence or for impeachment. Such testimony is obviously inconsistent with the assertions made by Jimmy Justice at trial that the house was 70 to 80 percent complete. Arab Lumber maintains that the alleged statement in the deposition became evidence in the trial and that it should therefore be considered as the direct testimony of Jimmy Justice. The Justices, on the other hand, assert that the alleged statement was not in evidence and thus could not be properly considered by the trial court. "With respect to the admissibility against a party of a pleading drawn and signed only by his counsel, and not shown to have been sworn to, signed by, drawn under or recognized by him in some other way as a correct statement, [Alabama] decisions are [apparently] in conflict." C. Gamble, McElroy's Alabama Evidence § 181.01(2) (3d ed. 1977). We pretermit any consideration of this issue, however, on the basis that there was sufficient evidence, irrespective of this alleged statement, to support the finding of the trial court. Any consideration thereof by the trial court was therefore immaterial.