171 So. 721

### DUNLAP v. MACKE et al.

### 6 Div. 959.

Supreme Court of Alabama.

Jan. 7, 1937.

W. F. Spencer, of Birmingham, for appellant.

Coleman, Spain, Stewart & Davies and Victor H. Smith, all of Birmingham, for appellees.

BROWN, Justice.

### Statement.

This appeal is from an interlocutory decree overruling the complainant's demurrer to the statutory cross-bill of the respondents.

The original bill is filed under the statute to quiet the complainant's title to the leasehold interest in the property, consisting of a lot on Twentieth street in the city of Birmingham, upon which the complainant's place of business is situated and of which he was in possession.

The answer of the defendants, which they pray be taken as a cross-bill (Code 1923, § 6550), alleges that the complainant acquired title under written leases from Mrs. Mary A. Macke, the owner thereof, the first of date August 1, 1932, and the other May 7, 1935. In the first lease the property is described as "100 feet on the eastern line of 20th Street next to and adjoining the Medical Arts Building which extends back of that uniform width of 212½ feet to the City School property; the amount of space under consideration is 100x135 feet, and the lessor has a lunch stand on the northern side of said lot next to the garage which is to remain there undisturbed if so desired by the lessor, but the old residence on said lot is to be removed by the lessor at his expense, for occupation and use as a parking lot, soft drinks and lunch stand or any legitimate business and not otherwise, for and during the term of five years ($50.00 per month for the first two years, $60.00 per month for the third year, and $75.00 per month for the last two years), to-wit, from the first day of September, 1932." The rents reserved as above indicated are payable monthly in advance.

It is stipulated "that the lessee will have the right and privilege to remain in possession of the above premises for one year undisturbed, *but if the lessor determines to give 60 days' notice the 2nd year to the lessee to vacate, or cause the agent to give said notice to the lessee, the lessor will in that event refund $750.00* to the lessee, and if the same is demanded the third year by the lessor, $500.00 is to be refunded to the lessee and if the same is demanded the 4th year, $250.00 is to be refunded to the lessee,

*and if the same is demanded the fifth year no payment is required, but 60 days' notice is to be given by the lessor or his agent to the lessee.*" (Italics supplied.)

The lease also stipulates that "All improvements * * * to the leased premises shall * * * become the property of the lessor," except "such additions as are usually classed as furniture and fixtures."

It is also stipulated that the lessor may annul the lease "upon two (2) days' written notice to the lessee, and * * * thereupon re-enter and take possession of said premises, upon the happening of any one or more of the following events: (a) In the event the lessee should fail to pay any one or more of said monthly installments of rent as and when the same become due, and such default should continue for ten (10) days after written demand for the payment thereof is made by the lessor upon lessee."

By the second lease executed on the 7th of May, 1935, Mrs. Macke demised to the complainant, Dunlap, the "one-story frame and stucco building located on the Northwest corner" of the lot described in the first lease, occupying a space of 12x20 feet, and referred to as a "lunch stand." The second lease gave the lessor the power to declare a forfeiture of the lessee's rights for nonpayment of rents, as in the first, and also stipulated that, should the first lease be terminated as provided therein, "then in that event the lessee shall have the privilege of terminating this lease by giving the lessor at least sixty (60) days' previous notice in writing. Should the lessor terminate the above referred to lease, dated the 1st day of August, 1932, by and between these same parties, then in that event they shall have the privilege of terminating this lease by giving the lessor at least sixty (60) days' previous notice in writing. The intent of these clauses is that in the event of cancellation of the above referred to lease, dated the 1st day of August, 1932, that either party hereto may terminate this lease simultaneously."

It is alleged in the cross-bill that Robert B. Macke is the executor of the will of Mary A. Macke, now deceased, and the sole legatee thereunder; that the defendants Bashinsky and Case are the owners in fee of the South 25 feet of said lot, acquiring their title by warranty deed executed by Mary A. Macke on June 12, 1933; that "on to-wit, the 14th day of October, 1935, pursuant to paragraph No. 5 of said lease (Exhibit 'A' hereto), Mary A. Macke, and the respondents, Leo E. Bashinsky and Cyrus A. Case, executed and delivered to the said James W. Dunlap, a demand for possession of said premises and notice of termination of said lease sixty (60) days after the date of delivery of said notice [herein above set out], * * * and before the expiration of sixty (60) days from the date of delivery of said notice and before the Two Hundred Fifty Dollars ($250.00) became due from the respondents to the complainant under the terms of said lease, the complainant did, on to-wit, December 5, 1935, file his bill of complaint herein; and that the said complainant in said bill has denied the right of the respondents to terminate said lease; that the respondents are ready, able and willing to pay to the complainant the said sum of Two Hundred Fifty Dollars ($250.-00) required by the terms of said lease to be refunded to the complainant upon the termination thereof during the 4th year of said lease; and the respondents hereby offer to pay said sum to the complainant provided, however, that respondents are entitled to a set-off against the complainant for the rent of said premises and for the reasonable value of the use and occupation of said premises from November 1, 1935."

The cross-bill also avers that, after said notice to vacate was served, the complainant failed to pay the rent due November 1, 1935, and demand in writing for the payment of same was made, and the complainant thereafter failed to pay the same, in consequence of which respondents declared a forfeiture of complainant's rights under both of said leases.

The defendants, in their cross-bill, offer to do equity and pray "that upon the final hearing of this cause Your Honor will order, adjudge and decree that the right of the complainant in and to the premises has been terminated and that the complainant is no longer entitled to possession of said premises or any part thereof as against these respondents, or any of them, * * * and that Your Honor will ascertain and determine the amount of rent due from the complainant to the respondents and the value of the hire of the use of said premises due from the complainant to the respondents from November 1, 1935, to the date of said decree, and will render judgment against the respondents for the amount so ascertained to be due, and will order the complainant to forthwith quit and deliver up possession of said premises to the respondents." The

defendants also pray as an incident to relief that they be allowed reasonable solicitor's fees, predicating their right thereto on the following provision in the first lease: "The lessee will pay lessor a reasonable attorney's fee in the event lessor employs an attorney to collect any rents due hereunder by lessee, or to protect the interest of lessor in the event the lessee is adjudged a bankrupt, or legal process is levied upon the goods, furniture, effects or personal property of the lessee upon the said premises, or upon the interest of the lessee in this lease or in said premises, or in the event the lessee violates any of the terms, conditions or covenants on the part of the lessee, herein contained."

### Opinion.

The cross-bill, as appears from the foregoing statement of the case, seeks a judicial determination that all the rights of the complainant, lessee, have "terminated and that the complainant is no longer entitled to possession of said premises or any part thereof as against * * * respondents, or any of them," and for relief incident thereto. The cross-bill is single in its purpose, but undertakes to state two independent grounds upon which the defendants predicate their right to such relief:

First, that the notice of October 14, 1935, that the lessor and those claiming under her had *"elected to terminate your lease,* which termination shall be effective sixty (60) days from date of this notice," accompanied by a conditional offer to pay "the consideration of $250.00 provided in the lease for its cancellation during the 4th year thereof," ipso facto, upon the expiration of the 60 days terminated the lease and the complainant's right of occupancy.

And, second, that the lessee's default in payment of rent on November 1, 1935, the demand for payment and the failure for 10 days to make such payment, gave the defendants the right to declare a forfeiture, which they have exercised.

On the other hand, complainant, appellant here, contends that the notice given was not in compliance with the terms of the lease authorizing a termination thereof; that the right to termination could not be exercised without a refund of the stipulated amount or a present offer to do so; that the lessor and those claiming under her, wrongfully—that is, without a compliance with the stipulations of the lease— precipitated the controversy, injecting into the situation such uncertainty as to justify the lessee's failure to pay rent in advance, and such failure does not justify the lessor and those claiming under her to declare a forfeiture of the complainant's rights.

It is familiar law, applicable to the interpretation of contracts, that where the same is in writing it is the duty of the court to interpret it and declare its legal effect. Ex parte Patrick, 205 ·Ala. 662, 88 So. 837;· Holman et al. v. Crane et al., 16 Ala. 570; Hardaway-Wright Co. v. Bradley Bros., 163 Ala. 596, 51 So. 21. So also, where the stipulations are plain and unambiguous, there is no room for interpretation, and the parties thereto "may stand upon the letter" of the contract. Smith Sons Lumber Co. v. Steiner, Crum & Weil et al., 204 Ala. 306, 85 So. 758.

The pertinent provision in the lease for its termination by the lessor is: "* * * if the lessor determines to give 60 days' notice the 2nd year to the lessee to vacate * * * the lessor *will then refund $750.00* to the lessee; and if the *same is demanded* the third year by the lessor, $500.00 is to be refunded to the lessee, *and if the same is demanded the 4th year, $250.00 is to be refunded to the lessee,* and if the same is demanded the fifth year no payment is required, but 60 days' notice is to be given by the lessor or his agent to the lessee." (Italics supplied.)

It is clear that the notice, to be sufficient to terminate, must be "to vacate," and, when the vacation is thus "demanded," the lessor must "then refund" the stipulated amount, and thereafter the lessee has 60 days within which to vacate.

Our judgment, therefore, is that the averments of the cross-bill do not show that the lessor or those claiming in her right have complied with the stipulations in the lease.

·It further appears that the lessor and those claiming under her precipitated the controversy before the default in the payment of rent, upon which they rest their right to declare a forfeiture, and a court of equity will not permit them to rest such right on their own misadventure. Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348.

Some of the grounds of the demurrer— those pointing out the defects hereinabove noted—were well taken, and the demurrer is due to be sustained. The decree of the circuit court is therefore reversed and one here rendered sustaining the demurrer to

the cross-bill, and the cause is remanded with leave to respondents to amend within 20 days, as they may be advised.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.