65 So.2d 698

**AIR CONDITIONING ENGINEERS, Inc.**
**v. SMALL.**

**1 Div. 426.**

Supreme Court of Alabama.

April 16, 1953.

Rehearing Denied June 18, 1953.

———◆———

Vickers & Thornton, Mobile, for appellant.

172

Thos. E. Twitty and Inge, Twitty, Armbrecht & Jackson, Mobile, for appellee.

**PER CURIAM.**

The primary question on this appeal is whether a contract was entered into between appellee, as the general contractor for an office building, and appellant, as a subcontractor for the air conditioning and heating. There was judgment for plaintiff and defendant appeals.

The first count of the complaint was a common count on account. It may be eliminated as not appropriate to the claim as developed. 3 Alabama Digest, Assumpsit, p. 179, ⊙⟶ 5. The second count is for the breach of a contract in writing, consisting of a written offer under date of August 30, 1948 made by the defendant to the plaintiff of a named figure as the amount of defendant's bid to perform certain work and furnish certain materials and equipment in accordance with specifications for alterations and addition to an office building; that the offer was accepted by plaintiff in writing on, to wit, September 16, 1948. A breach was alleged as having been made by defendant's failure to perform any of the work or furnish any of the material. Appellant does not press other claim of error than that involved in the failure to prove the existence of the contract as alleged.

The Alabama State Docks Commission advertised for bids for the alteration of its office building. Plaintiff, a resident of Jacksonville, Florida, wished to make a bid and some correspondence was had with defendant about it. A letter dated August 30, 1948 was written by defendant to plain-

tiff, which letter constitutes defendant's bid referred to in count 2 of the complaint. It is as follows:

"Air Conditioning Engineers, Inc.
152 St. Louis St.          P. O. Box 1567
Mobile 9, Alabama          Dial 2–1891–2

August 30, 1948.

"Mr. James H. Small & Company
P. O. Box 4786,
Jacksonville, Florida.

Subject: Air Conditioning and Heating,
State Docks
Office Building.

"Gentlemen:

"Wish to quote a price of $35,851.00 for Division XXII, air conditioning and heating page 1 through 13. We have also included under Division IX miscellaneous metals the following paragraphs:

"1. Return air conditioning floor and ceiling grilles

"2. Equipment room louvres

"3. Louvres in Dock Department walls and interior doors. We would like to point out that we only furnish the louvres in the Dock Department walls and interior doors and these are to be installed by others.

"We are using Carrier equipment throughout with the exception of the fan and coil sections. The fan and coil sections that we use will comply with the specifications.

"This bid is in accordance with specifications for alterations and additions to Office Building Alabama State Docks, Mobile, Alabama, prepared by Donald A. Hawkins, architect, Luquire Engineering Company, consulting engineers, and Addendum No. 1, Drawings M–7, M–8, M–9 dated April 1, 1948.

"We appreciate very much the opportunity of quoting and if there are any questions concerning this bid we will be glad to clarify them upon your request.

"Very truly yours,
(sgd) J. H. Hastie."

Plaintiff testified that he used the named figure in his bid for the general contract. That he had not received defendant's letter of August 30, 1948, but acted in accordance with the telephone conversation.

Plaintiff's bid was mailed from Jacksonville, Florida, on Saturday, August 29th. The bids were opened August 31, 1948. Mr. Hastie, vicepresident of defendant, was present, and telephoned plaintiff that his bid was low. Plaintiff was awarded the contract on the bids opened August 31st. Plaintiff came to Mobile from Jacksonville, his residence, and on September 3, 1948, advised the vicepresident that the governor had approved his general contract, and as soon as the governor signed it a formal order or contract would be sent defendant. Plaintiff Small testified:

"On September 3rd. I received a telephone call advising me to come over and see Director Sweet, which I did. I arrived here on the third. I had with me a letter listing subcontractors for submission to the architect, the contract document stated that we must not let the subcontracts unless and until the subcontractor had been approved by the architect, and in compliance with that we had made a list of the proposed subcontractors for submission. On that list, which is what you have in your hand, I have the names of these subcontractors, and the names of the men in that particular firm that we had been dealing with. When I was here on the third I called these gentlemen, including Mr. Hastie of Air Conditioning Engineers, and told them, that is, they know we were low, that I had just seen Mr. Sweet, and he had told us that the contract would be issued as soon as the Governor gave his signature, that he had already approved it; that we had used their figure in the bid, and we would send them a formal order as soon as they were approved."

A list of the subcontractors was then sent to the architect, including the name of defendant with a pencil notation opposite his name of 35,800. A copy of the specifications for the work, such as were here material, was introduced in evidence as referred to in the letter from defendant to plaintiff of August 30, 1948. By it all bidders were required to examine carefully the plans and specifications. They also in-

cluded specifications for the air conditioning and heating, which provided that "the compressor shall be of a multi-cylinder reciprocating type, slow speed belt driven," and that the "condenser shall be constructed entirely of stainless steel with the exception of fan shaft, wheels and scrolls."

By letter dated September 16, 1948, plaintiff wrote to defendant as follows:

"James H. Small & Co. (Not incorporated)
1528 East Adams Street,
      P. O. Box 4786,     Phone—5—6470
        Jacksonville 1, Florida.
    General Contractors-Engineers

        September 16, 1948

"Mr. J. H. Hastie, Vice-President & Secretary,
Air Conditioning Engineers, Inc.,
P. O. Box 1567
Mobile, 9, Alabama.

    Subject:  Alterations and Additions to
              Office Building,
              Alabama State Docks
              Mobile, Alabama.
"Dear Mr. Hastie:

"We are pleased to advise you have been approved as a subcontractor for air conditioning and heating for the subject job and to save time we are enclosing the original copy of the subcontract covering this work which we have executed.

"If the subcontract is satisfactory to you please complete the performance bond and return to us an executed copy of the contract and bond.

"The costs of the performance bond will be borne by us.

    "Yours very truly,
        James H. Small & Co.
          (sgd)   James H. Small
              James H. Small."

This apparently was intended to prove plaintiff's acceptance of defendant's bid, as alleged in count 2 of the complaint. There was enclosed in that letter a proposed written contract executed by the plaintiff and for execution by defendant with request for the return of it to plaintiff. There was no acceptance in terms used in that letter. It was stated in defendant's letter of Au-

gust 30th that he was using Carrier equipment for air conditioning and heating. That equipment consisted of a high speed compressor instead of a low speed compressor as required by the specifications, and the equipment also consisted of a galvanized evaporative condenser instead of one made entirely of stainless steel as required by the specifications. The proposed subcontract, submitted to the defendant for execution with the letter of September 16, 1948, contained the requirement that the subcontractor shall be bound by the terms of the original contract in so far as the same may pertain to the work and materials embraced in the subcontract. That had the effect of eliminating Carrier equipment, referred to in the letter of August 30, 1948.

In a letter dated September 30, 1948, plaintiff wrote to the defendant calling his attention to his letter of September 16th, in which he enclosed the subcontract to defendant for execution, and requested its return signed by defendant. Soon thereafter, in the early part of October of 1948, plaintiff Small and vicepresident Hastie of defendant corporation had a conversation in Mobile, as to which plaintiff testified that he asked Mr. Hastie why he had not sent back the subcontract; that he told Mr. Small, in reply, that they were having difficulty with the architect over the equipment defendant had submitted in accordance with the provisions of the subcontract, and that Small had seen Mr. Hawkins, the architect, who had told Small that he had been having trouble getting a list of equipment from defendant. Small then testified that he told Mr. Hastie that he should send in the list, and Mr. Hastie said he would like for Mr. Small to see Mr. McPherson. They went into the next room and saw Mr. McPherson, president of defendant corporation: whereupon Mr. Small told Mr. McPherson that, in his opinion, they would not have any trouble with Mr. Hawkins if they complied with his reasonable demands, and Mr. McPherson said they would consider it and they would get it straightened out with Mr. Hawkins.

There was also introduced in evidence a letter of October 6, 1948, addressed to the

defendant signed by the architect Hawkins, advising the defendant that their *bid was not based on the plans and specifications or in accordance with the instructions to the bidder in two particulars:* (1) that specifications call for stainless steel evaporator condenser, whereas the defendant quoted a galvanized condenser; and (2) the specifications call for low speed motor on the compressor, whereas defendant quoted high speed motor on the compressor, and, therefore, he has reached the conclusion that defendant's bid was not given in good faith since neither the architect or general contractor were informed of the defendant's intention not to comply with the specifications.

A letter was introduced dated October 13, 1948 to the plaintiff signed by Mr. McPherson as president of defendant corporation advising him that defendant had received a letter from Mr. Hawkins, the architect, dated October 6, 1948, stating that the Carrier compressor and evaporative condenser which they proposed to use do not meet the specifications and are not approved, and also advising plaintiff that the defendant apparently misinterpreted the specifications in so far as the condenser and compressor were concerned; and that the defendant felt that they should step aside and allow the contract to be awarded to the low bidder or some other party the plaintiff may designate. It also advised plaintiff that defendant felt that any reputable, standard air conditioning equipment, such as Carrier, would meet with the architect's approval, but that since that was not the case defendant had no alternative but to withdraw.

On October 23, 1948, plaintiff wrote to defendant in answer to the letter of October 13, 1948, (so reciting) advising defendant that plaintiff had used defendant's figures in preparing his bid and had so advised defendant, and that defendant "have an obligation to fulfill your contract with us." That plaintiff will secure other bids for the work and hold defendant responsible for any increased cost plaintiff may incur "by this procedure". In a letter

dated January 20, 1949, plaintiff wrote to defendant as follows:

"January 20, 1949.
"Air Conditioning Engineers,
Mobile, Alabama.
     Attn. Mr. J. C. McPherson.
"Dear Sir:
"Referring to your letter of October 13, 1948 and ours of October 25, 1948:
"As stated in our letter above cited we made diligent effort to secure a satisfactory subcontractor for the work of heating and air conditioning at the State Docks Office when you withdrew your accepted offer on which our bid to Alabama State Docks & Terminals was predicated.
"We received one informal bid for the work in an amount slightly more than $40,000.00 and a firm bid from Leff Engineering Company of Mobile in the amount of $38,617.00.
"As your offer, which we had accepted and which you were advised we would use in our bid to the Alabama State Docks & Terminals, was for the amount of $35,851.-00, you are indebted to us for the difference of $2,766.00 for which we would be glad to have your remittance.
     "Yours very truly,
          James H. Small & Co.
               (sgd) James H. Small
                    James H. Small."
"cc Director Sweet.
Plaintiff then made proof as to such bid by Leff Engineering Company of $38,617, and his loss of $2,766 occasioned thereby. There was a jury and verdict for plaintiff for $3,039.80.

We repeat the statement that the right of defendant to the affirmative charge depends upon whether defendant became bound by a contract in writing as alleged in count 2, supra, of the complaint. The trial court in his oral charge and in special requested charges given by him submitted that question to the jury for decision.

The rule is that the minds of the parties must meet as to all the essential features of a contract. Cochran Lumber Co. v. Paterson & Edey Lumber Co., 202 Ala. 366, 80 So. 448; Bissinger v. Prince, 117 Ala. 480, 23 So. 67; Hodges v. Sub-

lett, 91 Ala. 588, 8 So. 800. The assent of the parties must be manifest from the language used if it is certain in meaning.

In the case of Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 75 So. 284, 288, the principle is stated as follows: "While it is the province of the court to construe written contracts, where the meaning is to be collected from the writing without the aid of evidence *aliunde,* yet where the meaning, the intent of the parties, depends upon the ascertainment of facts *aliunde* the instrument, this 'admixture of parol with written evidence draws the whole to the jury,' requires the submission of the issue to, the deduction of the inference of fact by, the jury. Sewall v. Henry, 9 Ala. 24, 31; Holman v. Crane, 16 Ala. 570, 580; Boykin v. Bank, 72 Ala. 262, 269, 47 Am.Rep. 408."

The rule is thus expressed in Boykin v. Bank of Mobile, 72 Ala. 262: "It is the province of the court to construe written contracts and declare their legal effect. But, when the legal operation and effect of an instrument depends, not only on the meaning and construction of the words, but upon collateral facts *in pais,* and extrinsic evidence, the inference of facts to be drawn from the evidence should be submitted to the jury." See, also, Dozier v. Vizard Inv. Co., 203 Ala. 421, 83 So. 572.

In the case of Doe ex dem. Holman v. Crane, 16 Ala. 570, it is pointed out that a contract may consist of several instruments of writing and constitute but one agreement. And further, on page 580, of 16 Ala., that "where the effect of written instruments depends not merely on their construction and meaning, but upon collateral facts *in pais* and extrinsic circumstances, the inferences of fact to be drawn from them should be left to the jury,—'an admixture of parol with written evidence draws the whole to the jury.'" That principle is also referred to in Merchants National Bank v. Cotnam, 250 Ala. 316, 326, 34 So.2d 122.

A contract may consist of several communications between the parties, some in writing and some verbal, each constituting a link in the chain which constitutes the comprehensive contract. Every such communication is a part of the contract, and is not extraneous to it nor *in pais.* Stephenson Brick Co. v. Bessemer Engineering & Construction Co., 218 Ala. 325, 118 So. 570; McLendon v. Eubanks, 249 Ala. 170(5), 30 So.2d 261. But extraneous matter, that is *in pais,* may sometimes be shown to clear an ambiguity which exists when the entire chain forming the contract is considered and it is ambiguous. Merchants National Bank v. Hubbard, 220 Ala. 372, 125 So. 335; Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A.L.R. 1153. Matter *in pais* used in that connection is that which is in opposition to that of record. This means in opposition to those incidents which constitute the contract. 2 Bouv.Law Dict., Rawle's Third Revision, p. 2441; 31 Corpus Juris 358, note 82, 42 C.J.S., In, p. 487.

The rule is also frequently stated that where there is no conflict in the evidence as to what are the terms of the contract involved in the suit, and its terms and conditions are certain, the construction of the contract is one of law for the court. That statement was made with reference to a chain of communications creating a contract. McFadden v. Henderson, 128 Ala. 221, 29 So. 640, and applies to verbal transactions when there is no conflict in the evidence, and the terms are positively stated. Swanner v. Swanner, 50 Ala. 66; Barnhill v. Howard, 104 Ala. 412, 16 So. 1.

It is also said that when the contract is plain and unambiguous there is no room for interpretation. Dunlap v. Macke, 233 Ala. 297, 171 So. 721; McLendon v. Eubanks, supra.

We think our cases mean that the court, and not the jury, will analyze and determine the meaning of a contract, whether verbal or written when its terms are clear and certain, and also ascertain whether or not it is ambiguous in the light of its terms, and if it is found to be ambiguous, but not void for uncertainty, its meaning may be clarified by a consideration of the facts and circumstances *aliunde* and *in pais,* and when so it is the province of the jury to ascertain those facts and draw inferences from them which carries

to the jury the whole issue upon proper instructions by the court.

The contract claimed by plaintiff in this case, as alleged in count two of the complaint, is that defendant made an offer in writing on August 30, 1948 to perform certain work and furnish certain materials and equipment in accordance with certain specifications, and that the offer was accepted by plaintiff in writing on, to wit, September 16, 1948. A proper construction of that bid and its alleged acceptance is not dependent upon any fact or circumstance extraneous to the incidents of the contract, supplied by parol evidence. The general specifications are referred to in the bid and became a part of it. They are not extraneous to the contract nor *in pais* of the record of the contract. The subcontract enclosed with the letter of September 16th is a part of it as an acceptance to the extent that it is an acceptance.

On that status this Court construes the bid of September 30, 1948, as the architect did, manifested by his letter of October 6th to defendant to furnish Carrier equipment (except as specified—not material here), expressing in the bid the opinion that such equipment was in accordance with the specifications of the architect named. But the bid was not in accordance with those specifications.

The letter of September 16th by plaintiff to defendant, with the enclosed document which is supposed to be an acceptance of the bid, specifies in the enclosed document that defendant must comply with the specifications. That was in effect a counter proposal eliminating the Carrier equipment. To be a contract, therefore, defendant must accept the counter proposal. The description of the contract in the complaint stops with the letter of September 16th. Those two communications do not constitute the acceptance of a bid made in clear and certain terms, 17 C.J.S., Contracts, § 36, pp. 364, 365, as the complaint in effect alleges. But the letter of September 16th being a counter proposal, defendant set about to see if it could accept it; but failed to convince the architect that Carrier equipment would be satisfactory. Therefore, instead of accepting the counter proposal and signing the proffered subcontract, defendant wrote plaintiff on October 13, 1948, in effect, that it was unable to accept the counter proposal and withdrew its bid. There was never a meeting of the minds.

That, we think, is a proper interpretation of the situation, and is one for the court, and not the jury, to make.

The foregoing opinion was prepared by FOSTER, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

For the refusal of the affirmative charge requested by defendant, the judgment is reversed and the cause remanded.

Reversed and remanded.

LAWSON, SIMPSON, STAKELY and MERRILL, JJ., concur.