This is an appeal from the Circuit Court of Cullman County's action interpreting a contract in favor of the plaintiff Casey and against the defendant Reid.
 ISSUE
The defendants on appeal contend they are not liable under the terms of the contract for an auctioneer's fee. This court finds the trial court's action in awarding a judgment in the amount of $3,500 to Casey, the auctioneer, sustainable, and we affirm.
 FACTS
The appellants, Mr. Glenn R. Reid and his wife, Mavis Reid, are residents of Cullman, Alabama, where Mr. Reid is engaged in the real estate business. The appellee, Mr. J.M. Casey, does business as Southern Auction Company (hereinafter Southern).
On May 30, 1975, Mr. Casey, Mr. Frank M. Campbell, an employee of Southern, and Mr. Reid met in the latter's office to make arrangements for Southern to conduct an auction of certain of Mr. and Mrs. Reid's real estate holdings. The realty consisted *Page 80 
of unimproved subdivision lots and a rental house. Pursuant to the discussions Mr. Casey, on that day, presented a form entitled "CONTRACT" to Mr. Reid. It stated that in consideration of one dollar the owners of the property sold Southern the exclusive right to sell at an auction on July 12, 1975, the Reid property, to wit:
 "All that tract or parcel of land lying and being in the County of Cullman State of Alabama and being more particularly described as follows: All of Leighwood Acres Subdivision, City of Cullman, except Lots 15, 16, 17, 19, 20, and 23. Bulk area south of Leighwood Subdivision consisting of approximately 30 lots.
 "The real estate above described shall be offered at auction upon the terms of 25% down, such payment to be made by cash or check with the balance due in 30 days.
 "Auctioneer agrees to advertise and promote the auction in its usual way, to furnish necessary help to conduct the auction and pay expenses of same and owner agrees that no other expenses connected in any way with the auction is to be paid by auctioneer and that auctioneer's duties and responsibility will end at completion of auction.
 "The owner agrees to pay and auctioneer agrees to accept as its full compensation for its services Ten (10%) per cent of the total selling price, said commission to be paid immediately after the auction has been conducted, and the owner agrees that auctioneer may deduct this percentage from the gross proceeds of the sale as its commission. If sale of property is not confirmed by owner a fee of $3500.00
will be paid to auctioneer immediately after auction has been conducted for auctioneer's expenses and time. . . ."
The emphasized language was handwritten in blanks on the form by the parties.
On May 30, 1975, the contract was signed by Mr. Casey for Southern but was not signed by either Mr. Reid or Mrs. Reid.
The contract remained in the possession of Mr. Reid for a short period of time, a week or two, until the parties again met so that Mr. Reid could show Mr. Casey the property he desired to sell. Mr. Reid told Mr. Casey that Mrs. Reid did not wish to sell the property unless the sale price at the auction would be sufficient to pay off an existing mortgage on the property of $42,500 plus the auctioneer's commission.
To this end, Mr. Casey added the following language to the contract:
 "15 Lots and approx 30 Lots subject to mortgage of approx $42,500 plus commission."
This language was incorporated so that the pertinent provision of the contract in its final version read as follows:
 "All that tract or parcel of land lying and being in the County of Cullman State of Alabama and being more particularly described as follows: All of Leighwood Acres Subdivision, City of Cullman, except Lots 15, 16, 17, 19, 20, and 23. Bulk area south of Leighwood Subdivision consisting of approximately 30 lots. 15 Lots and approx 30 Lots subject to mortgage of approx $42,500 plus commission.
 "The real estate above described shall be offered at auction upon the terms of 25% down, such payment to be made by cash or check with the balance due in 30 days.
 "Auctioneer agrees to advertise and promote the auction in its usual way, to furnish necessary help to conduct the auction and pay expenses of same and owner agrees that no other expenses connected in any way with the auction is to be paid by auctioneer and that auctioneer's duties and responsibility will end at completion of auction.
 "The owner agrees to pay and auctioneer agrees to accept as its full compensation for its services Ten (10%) per cent of the total selling price, said commission to be paid immediately after the auction has been conducted, and the owner agrees that auctioneer may deduct this percentage from the gross proceeds of the sale as its commission. If sale of property is not confirmed by owner a fee of $3500.00 will be paid to auctioneer immediately after *Page 81 
auction has been conducted for auctioneer's expenses and time. . . ."
After Mr. Reid watched Mr. Casey insert the provision, the two men returned to Mr. Reid's home where Mrs. Reid signed the contract. Mr. Reid also signed the contract after Mr. Casey inserted the above quoted language.
The following testimony concerning the intent of the parties as to the pertinent provision of the contract was admitted without objection in the trial court:
Mr. Casey, the appellee, stated that the provision he added was to insure that the Reids could refuse to sell the property for any bid received of less than $42,500 plus his commission. He stated the language he added in no manner affected his "no sale fee" of $3,500, which he was to receive for expenses and conducting the auction irrespective of whether the sale was confirmed by Mr. Reid. He stated the additional language was inserted to allow Mr. and Mrs. Reid to refuse to accept offers of less than $42,500 plus the 10% commission, even though his (Mr. Casey's) sales commission would have been greater than the no sale fee.
Mr. Reid's testimony concerning the contract differs significantly from Mr. Casey's in only one respect. He asserts the insertion negated the provision of the contract relating to a no sale fee. He intended for the auctioneer's fee to be paid only if bids received equaled $46,750. ($42,500 plus 10% auctioneer's fee.)
Subsequent to execution of the contract Southern had brochures containing information about the property printed and also advertised the property in the Cullman Times and a Birmingham newspaper. Southern erected a tent at the auction site, placed sale signs on the various lots and provided a sound vehicle to announce the sale. Additionally, at least four Southern employees were at the auction to solicit bids from those in attendance. Mr. Casey was the auctioneer.
Approximately 25 to 30 attended the auction. Bids taken on the various lots within the subdivision, sold individually, totaled $38,655. Additionally, a bid of $40,000 on the entire subdivision, if sold in one parcel, was received. No interest was displayed by the bidders in bidding on the rental house. Mr. Reid refused to accept the bids. Hence, no land was sold at the auction.
Mr. Reid refused to pay Southern, and Mr. Casey instituted proceedings to collect the $3,500 fee.
Against this background the trial court decreed:
 "It does not appear that the provisions of this Contract are in conflict, nor does it appear that the parties intended that the Plaintiff would not be compensated for his services in connection with the auction in the event that the Defendants did not confirm this sale. Certainly, it is obvious that the Defendants did not intend to sell the property in the event that it did not bring the amount of the mortgage, plus commission, however, Defendants could have confirmed a sale for less than this amount, but did not and Defendants are still the owners of the land, or were such immediately after the auction, and all that was left for them to do was to compensate the Plaintiff for their expenses and time, which was set forth in the Contract and which was not described therein as a commission. It may be that the sum of Three Thousand Five Hundred and 00/100 ($3,500.00) Dollars is an excessive fee for the Plaintiff's expenses and time, however, there was no evidence to this effect and that is not the question before the Court.
 "It is, therefore, ORDERED and ADJUDGED that a Judgment be and the same is hereby entered in favor of the Plaintiff and against the Defendants in the amount of Three Thousand Five Hundred and 00/100 ($3,500.00) Dollars, . . ."
Mr. Reid takes this appeal from that judgment.
 I
We note at the outset that the finding of the trial court based on evidence ore *Page 82 tenus is viewed with a presumption of correctness upon appeal.Rafield v. Johnson, 294 Ala. 235, 314 So.2d 695; Caldwell v.Caldwell, 54 Ala. App. 479, 309 So.2d 833. In this instance, we need look no further than the contract itself to sustain the finding below.
It is the duty of the court to analyze and determine the meaning of a contract when its terms are clear and certain.Birmingham Trust National Bank v. Midfield Park, Inc., 295 Ala. 136, 325 So.2d 133. Moreover, where the terms of a contract are ". . . plain and unambiguous, there is no room for interpretation, and the parties thereto `may stand upon the letter' of the contract." Dunlap v. Macke, 233 Ala. 297, 300,171 So. 721, 724. Here, the terms are unequivocal.
If a sale was consummated, Mr. and Mrs. Reid were liable to Southern in an amount equal to 10% of the sale price. If sale of the property was not confirmed, the Reids were liable for $3,500 for "auctioneer's expenses and time."
The insertion merely allowed the Reids to refuse to accept a bid price of less than $42,500 plus the value of the auctioneer's sales commission without incurring liability to Southern for the excess of 10% of the bid price over the $3,500 no sale fee.
All provisions of a contract must, if possible, be given effect. Land Title Co. of Alabama. v. State ex rel. Porter,292 Ala. 691, 299 So.2d 289. Here, the plain meaning of the additional language does not obviate the no sale fee clause. Neither does it, in our reading, alter the latter clause one iota. Indeed, the contractual language interpreted in conjunction with the services rendered by. Southern compels our agreement with the trial court's finding that the contract contemplated that compensation be paid to Southern for substantial services performed, irrespective of whether the sale was confirmed by the Reids.
Even a finding that the terms of the contract are uncertain and ambiguous would not alter the above conclusion; for if there is uncertainty and ambiguity in the contract, it is the duty of the court to construe the contract so as to express the intent of the parties. Johnson-Rast and Hays, Inc. v. Cole,294 Ala. 32, 310 So.2d 885; Southern Cafeteria Operating Company,Inc. v. Eley, 52 Ala. App. 656, 296 So.2d 743.
The Alabama Supreme Court, in Flagg-Utica Corporation v. Cityof Florence, 275 Ala. 475, 480, 156 So.2d 338, 342, stated:
 "It is a long established principle of law obtaining in this state that if the language of a written agreement is on its face ambiguous, the courts will look at the surrounding circumstances, at the situation of the parties, and the subject matter of the contract for aid in giving a construction to its language."
Evidence relevant to these factors was admitted in the trial court. As shown above, ample testimony was adduced to sustain the judgment rendered therein.
It follows that the judgment of the trial court is to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.