669 So.2d 98 (1995)
SOUTHERN MEDICAL HEALTH SYSTEMS, INC., and Springhill Health Services, Inc.
v.
Kent B. VAUGHN.
Kent B. VAUGHN
v.
SOUTHERN MEDICAL HEALTH SYSTEMS, INC., and Springhill Health Services, Inc.
1921524, 1921557.
Supreme Court of Alabama.
June 23, 1995.
Rehearing Denied September 1, 1995.
James D. Brooks and William W. Watts III of Reams, Philips, Brooks, Schell, Gaston & Hudson, P.C., Mobile, for appellants/cross-appellees.
Steve Olen and Michael S. McGlothren of Olen & McGlothren, P.C., Mobile, for appellee/cross appellant.
COOK, Justice.
Southern Medical Health Systems, Inc., and Springhill Health Services, Inc.[1] ("SMHS"), in case number 1921524, appeal from a judgment entered on a jury verdict in favor of Kent Vaughn in his action against *99 SMHS alleging breach of an employment contract; and Vaughn, in case number 1921557, cross appeals from that judgment to the extent that it denied his claim for emotional distress. We affirm.
In 1976, Kent Vaughn began employment as comptroller of Springhill Memorial Hospital, a "health-related subsidiary" of SMHS's predecessor, located in Mobile, Alabama. On December 21, 1986, Vaughn and SMHS's predecessor executed a 10-year employment contract, pursuant to which Vaughn became the "chief financial officer" of that entity.
On August 23, 1989, Mrs. Celia Wallace, who was the chairwoman of the board and chief executive officer of SMHS, called a special meeting of SMHS's board of directors, during which she suggested that Vaughn might have breached his employment contract. At that meeting, the board suspended Vaughn for 30 days and authorized an investigation of his performance. The board reconvened on October 2, 1989, and received an investigative report prepared by T. Edward Potts, a "branch manager" for Corporate Special Services, Inc. The report concluded: "[I]t would appear that Mr. Vaughn ha[s] deceived the corporation..., violated IRS codes in expense accounting, exercised apparent poor judgment in the investment of corporate funds, and paid too little attention to the tasks assigned to his position." The board then voted unanimously to terminate Vaughn's employment.
Vaughn subsequently sued SMHS, claiming that it had breached the contract. Trial of the cause began on March 29, 1993. At the close of the plaintiff's evidence, and, again, at the close of all the evidence, SMHS moved for a directed verdict, contending, among other things, that "just cause existed for the termination of [the] plaintiff's employment contract." The motions were denied and the jury returned a verdict for Vaughn in the amount of $1,150,000. Following the denial of its motions for a JNOV or a new trial, SMHS appealed the judgment entered on that verdict. Vaughn cross appealed, contending that the trial court had erred in rejecting his proffer of evidence of emotional distress.

I. Case Number 1921524
SMHS contends that the trial court erred in (1) failing to grant its motion for a new trial, and in (2) rejecting requested jury instructions.

A. New Trial
SMHS first argues that it is entitled to a new trial on the ground that the "verdict is against the great weight and preponderance of [the] evidence" on Vaughn's breach of contract claim. "When a motion for a new trial is grounded upon the contention that the verdict is against the great weight of the evidence, we will not reverse a trial judge's denial of the motion if `evidence [is] presented that, if believed, would support the verdict.' " Leisure American Resorts, Inc. v. Carbine Constr. Co., 577 So.2d 409, 413 (Ala. 1990) (quoting Stokes v. Long-Lewis Ford, Inc., 549 So.2d 51, 52 (Ala.1989)). Thus, we shall first consider whether the verdict was supported by credible evidence that SMHS breached its employment contract with Vaughn.
In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages. See McGinney v. Jackson, 575 So.2d 1070, 1071-72 (Ala.1991); Seybold v. Magnolia Land Co., 376 So.2d 1083, 1085 (Ala.1979); Hanby v. Campbell, 222 Ala. 420, 421, 132 So. 893, 894 (1931). Because the only element of the claim in dispute in this case concerns Vaughn's own contractual obligations, we must determine whether he presented substantial evidence that he performed his part of the contract, and, therefore, that his termination was unauthorized.
In this connection, the contract contained the following relevant provisions:
"1. EMPLOYMENT. [SMHS's predecessor] employs Vaughn ... to serve as Chief Financial Officer ... and to perform the following duties ...:
". . . .

*100 "d. To perform all duties which are reasonable, customary and expected of a Chief Financial Officer....
". . . .
"4. TERMINATION. ... It is agreed that [SMHS's predecessor] may not terminate this Employment Contract except upon Vaughn's refusal or inability to perform the material duties and obligations under the terms hereof."
(Emphasis added.)
Conspicuously absent from this contract are provisions authorizing termination for "cause," or language of similar effect. The provisions restricting SMHS's right of termination to Vaughn's "refusal or inability to perform [his] material duties and obligations" thus render this agreement, as employment contracts go, singularly favorable to Vaughn.
Significantly, SMHS does not contend that Vaughn's termination was grounded on an inability to perform his duties, but, rather, it presents a list of specific acts it interprets as deliberate "misconduct." The effect of these actsin isolation or in cumulationessentially constituted, it argues, a refusal to perform. Brief of Appellants/Cross-Appellees, at 38-39. To bolster this affirmative defense, SMHS presented an expert witness "to testify concerning the reasonable and customary duties of a chief financial officer ... in the health care field." Id. at 21. By this evidence, SMHS sought to explain the intent of the parties as to a material contract provision the scope and nature of Vaughn's job description.
Indeed, the job description of a "chief financial officer ... in the health care field" is not deducible from the four corners of the instrument. This case illustrates, therefore, the following well-settled rule: "Where ... extrinsic evidence is introduced, in aid of ... interpretation [of a contractual provision], the question of its meaning should be left to the jury except where, after taking the extrinsic evidence into account, the meaning is so clear that reasonable men could reach only one reasonable conclusion...." J. Calamari & J. Perillo, The Law of Contracts § 3-14 (3d ed. 1987); see also Dill v. Blakeney, 568 So.2d 774 (Ala.1990) (reversing a summary judgment and remanding for a jury to consider the scope of a guarantee contract); see also Reeves Cedarhurst Development Corp. v. First Amfed Corp., 607 So.2d 184 (Ala.1992); Air Conditioning Engineers, Inc. v. Small, 259 Ala. 171, 65 So.2d 698 (1953).
Because extrinsic evidence was admissible in this case, also relevant on the issue of the parties' intent was evidence of the course of dealing or performance adopted by Vaughn and SMHS throughout their pre-contract and post-contract relationship. J. Calamari & J. Perillo, supra, at § 3-9. On this issue, Vaughn presented testimony and documentary evidence suggesting that the challenged acts were consistent with his pre-contract performance, or were accompanied by actual notice to the corporation's board members. Additionally, James Hasser, one of the directors who voted to terminate Vaughn, conceded at trial that his decision was not based on Vaughn's refusal to perform his contractual obligations. On these facts, the jury reasonably could have concluded that Vaughn's acts of alleged misconduct were, in fact, consistent with the intent of the contracting parties. Otherwise stated, the jury could have concluded that Vaughn had never refused to "perform [his] material duties," as that provision was understood by the parties, and, consequently, that his termination was wrongful. The trial court did not err, therefore, in denying SMHS's motion for a new trial.

B. Jury Instructions
SMHS next contends that the trial court erred in refusing to give its requested instructions as to (1) the relevance of an employer's post-termination discovery of an employee's pre-termination conduct, and (2) the liability of clients for the actions of their attorneys. We have thoroughly considered the contentions of the parties in the context of the facts, and we conclude that, as to the first requested instruction, the error, if any, was harmless; and that, as to the second requested instruction, the instruction did not fully and correctly state the law of this state. Consequently, the trial court did not err to reversal in refusing to give these requested instructions.

*101 II. Case Number 1921557

Vaughn asks us to remand this cause to the trial court "solely for retrial on the mental anguish issue." Brief of Appellee/Cross-Appellant, at 34. In doing so, however, he concedes that this Court has never recognized a rule authorizing the recovery of damages for mental distress caused by the breach of an employment contract. See Slovensky v. Birmingham News Co., 358 So.2d 474, 477 (Ala.Civ.App.1978) ("no recovery has ever been allowed for mental distress arising from the wrongful discharge of an employee in breach of an employment contract"). We decline to recognize such a rule in this case. The judgment of the trial court is, therefore, affirmed in all respects.
1921524AFFIRMED.
MADDOX, ALMON, SHORES, KENNEDY, and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
BUTTS, J., dissents, without opinion.
1921557AFFIRMED.
MADDOX, ALMON, SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
Southern Medical Health Systems, Inc., cites Ex parte Bettis, 549 So.2d 23 (Ala.1989), as authority for its contention that Southern Medical's requested charge number 12 was a correct statement of the law. Bettis was a "no opinion" affirmance; however, Justice Maddox's opinion concurring in part and dissenting in part, which I joined, stated:
"Assuming, however, that the attorney concealed the report and that the concealment was wrongful, then the letter would not be admissible against the defendants, because a client is not bound by the acts of his attorney if fraud or collusion is present. McWilliams [v. Martin], 237 Ala. [624] at 625, 188 So. [677] at 678 [(1939)]."
(Emphasis added.)
Southern Medical's requested charge number 12, in pertinent part, states:
"I charge you that any actions undertaken by any attorney for Southern Medical Health Systems, without the knowledge or authorization of Southern Medical Health Systems, are not to be considered as the actions of the defendant, Southern Medical Health Systems. It should not be considered by you as evidence of any concealment or wrongdoing by Southern Medical Health Systems."
(Emphasis added.)
The requested charge did not limit the client's not being bound by acts of an attorney to situations in which "fraud or collusion is present."
In my opinion, the defendant's requested jury charge number 7 is not a correct statement of the law. Charge number 7 states:
"An employer does not need to have knowledge of the exact manner in which the employee has breached his contract of employment at the time of his discharge. The employer may rely on facts and circumstances showing just cause for termination even if the employer did not know of such facts and circumstances at the time of discharge."
When this case was tried, in March and April 1993, there was substantial authority to support requested jury charge number 7 and substantial authority in conflict with this charge, insofar as the Age Discrimination in Employment Act of 1967 ("ADEA") cases were concerned. See McKennon v. Nashville Banner Publishing Co., ___ U.S. ___, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).
I am persuaded to follow the United States Supreme Court in McKennon, which resolved this conflict. Unlike this present case, McKennon dealt with an ADEA discharge; however, I think the reasoning of McKennon should apply to breach of contract of employment cases in Alabama. In a "mixed motives" case, in which two motivesone lawful and the other forbiddenare said to operate in the employer's decision to fire an employee (to terminate a contract of employment), the employee cannot prevail in an action against the employer if the lawful reason *102 alone would have justified the firing (the termination of the employment contract). That is not what is covered by requested jury charge number 7, nor was it what was involved in McKennon.
"McKennon's misconduct was not discovered until after she had been fired [in our present case the plaintiff's misconduct was not discovered until after his employment contract was terminated]. The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason [that the contract was terminated for a valid reason]."
___ U.S. at ___, 115 S.Ct. at 885.
In McKennon, the United States Supreme Court did allow misconduct discovered after the employee was fired to affect the specific remedy. If the employer establishes that the after-acquired evidence of wrongdoing "was of such severity that the employee in fact would have been terminated on these grounds alone if the employer had known of it at the time of discharge," ___ U.S. at ___, 115 S.Ct. at 886-87, then the "remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." ___ U.S. at ___, 115 S.Ct. at 886. The defendant's requested jury charge number 7 does not address the remedy but the right of the defendant to terminate the plaintiff's employment contract.
NOTES
[1] Springhill Health Services, Inc., is "the management subsidiary of" Southern Medical Health Systems, Inc.