THOMAS, Judge.
Platte River Insurance Company (“Platte River”) appeals from a judgment of the Henry Circuit Court in favor of William T. Murphy (“Murphy”) on Platte River’s action seeking enforcement of an indemnity agreement. We reverse and remand.
*800 Murphy was president of Circle M, Inc., d/b/a Murphy Oil Company (“Circle M”), from 1990 until 1999, at which time he resigned from Circle M because of his health. Murphy recorded his resignation from Circle M with the Henry Probate Court. In June 1995, Murphy, as president of Circle M, entered into an agreement with Platte River, which was then known as Acceptance Insurance Company, for a gasoline-tax bond. The gasoline-tax bond provided that Platte River would act as a surety for the gasoline taxes that Circle M, as a gasoline distributor, owed to the Alabama Department of Revenue (“the department”); the gasoline-tax bond covered up to $86,000 in gasoline taxes. The gasoline-tax bond did not have a set expiration date.
In May 1998, Platte River entered into an indemnity agreement with Murphy, Thomas C. Murphy, Robert M. Murphy, and Ernest M. Mize (collectively referred to as “the indemnitors”), in which the in-demnitors agreed, in their representative and individual capacities,[1] to indemnify Platte River if it was required to pay on the gasoline-tax bond. Like the gasoline-tax bond, the indemnity agreement lacked a specific expiration date.
In April 2003, the department filed a claim with Platte River, asserting that Circle M had failed to pay to the department gasoline taxes totaling $79,531 for the months of December 2002 and January 2003; the department revised its claim in October 2003, lowering the amount of unpaid gasoline taxes to $72,487.50. After investigating the department’s claim, Platte River paid the $72,487.50 in unpaid gasoline taxes to the department, pursuant to its obligation under the gasoline-tax bond.
Platte River notified the indemnitors of their obligation under the indemnity agreement; none of the indemnitors fulfilled their obligation to indemnify Platte River. Platte River filed a complaint in the trial court on June 6, 2006, stating a claim of breach of contract and a claim of account stated. The trial court entered a judgment against the indemnitors on August 27, 2009, based on a purported settlement agreement. Murphy filed a motion to set aside the August 27, 2009, judgment as to him, stating that neither he nor his counsel were present in the trial court on the day of the hearing on the proposed settlement agreement and that he had not agreed to settle Platte River’s claims against him. The trial court set aside its August 27, 2009, judgment as to Murphy, and Platte River’s claims against Murphy proceeded to trial. After hearing ore ten-us evidence at trial, the trial court entered a judgment in favor of Murphy on Platte River’s claims. Platte River appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Platte River argues that Murphy was bound by the terms of the indemnity agreement and that he presented no valid defense to the enforcement of the indemnity agreement. The material facts of this case are not in dispute. The question on appeal is whether the trial court correctly applied the law to the facts of this case.
“ ‘When evidence is presented ore ten-us, the trial court is “ ‘unique[ly] positioned] to directly observe the witnesses and to assess their demeanor and credibility.’ ” Ex parte T.V., 971 So.2d 1, 4 (Ala.2007) (quoting Ex parte Fann, 810 So.2d 631, 633 (Ala.2001)). Therefore, a presumption of correctness at *801 taches to a trial court’s factual findings premised on ore tenus evidence. Ex parte J.E., 1 So.3d 1002, 1008 (Ala. 2008)....
[[Image here]]
“ ‘ “However, the ore tenus standard of review has no application to a trial court’s conclusions of law or its application of law to the facts; a trial court’s ruling on a question of law carries no presumption of correctness on appeal.” Ex parte J.E., 1 So.3d at 1008 (citing [Ex parte ] Perkins, 646 So.2d [46,] 47 [ (Ala.1994) ], and Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala.1999)). This Court “ ‘review[s] the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.’ ” Id. (quoting Washington v. State, 922 So.2d 145, 158 (Ala.Crim.App. 2005)).’ ”
Smith’s Sports Cycles, Inc. v. American Suzuki Motor Corp., 82 So.3d 682, 684 (Ala.2011) (quoting Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala.2010)).
It is undisputed that Platte River and Circle M entered into an agreement for Platte River to provide Circle M with a gasoline-tax bond. It is also undisputed that Murphy entered into the indemnity agreement, in which he agreed to indemnify Platte River if it was required to pay a claim under the gasoline-tax bond, that Circle M did not pay all the gasoline taxes it owed to the department, and that Platte River paid the amount owed to the department by Circle M, pursuant to the terms of the gasoline-tax bond. Murphy testified that he believed that it was standard practice for gasoline-tax bonds to require renewal each year or to expire after three years; however, Murphy admitted that the gasoline-tax bond issued by Platte River to Circle M does not contain any set expiration date. Murphy also admitted that the indemnity agreement did not have any set expiration date. Murphy acknowledged that he never contacted Platte River to inform it that he had resigned from Circle M or that he wished to be released from the indemnity agreement.
 The gasoline-tax bond was a continuing bond that would terminate only by action of one of the parties to the bond, such as Circle M’s failure to pay the premiums on the bond. Likewise, the indemnity agreement guaranteeing reimbursement to Platte River should it have to fulfill its obligation under the gasoline-tax bond was continuous in nature. The terms of the indemnity agreement are clear and unambiguous.
“A contract ‘ “ ‘must be given effect, if at all, according to its plain and inescapable meaning.’ ” ’ James A. Head & Co. v. Rolling, 265 Ala. 328, 338, 90 So.2d 828, 836 (1956) (quoting Oates v. Lee, 222 Ala. 506, 507, 133 So. 44, 45 (1931), quoting in turn Union Central Relief Ass’n v. Thomas, 213 Ala. 666, 667, 106 So. 133, 134 (1925)). Moreover, where the terms of a contract are ‘plain and unambiguous, there is no room for interpretation, and the parties thereto “may stand upon the letter” of the contract.’ Dunlap v. Macke, 233 Ala. 297, 300, 171 So. 721, 724 (1937).”
Home v. TGM Assocs., L.P., 56 So.3d 615, 622 (Ala.2010). The indemnity agreement contains no language that limits Murphy’s liability to liability arising from events that occurred only while he was affiliated with Circle M or that states that Murphy’s liability is limited to liability arising from his official capacity as president of Circle M. Thus, by the plain language of the indemnity agreement, Murphy is liable to Platte River.
Murphy argues, however, that, because the indemnity agreement had no set expiration date and because he was no longer affiliated with Circle M when the obli *802 gation under the indemnity agreement accrued, it would be unreasonable to hold him liable under the indemnity agreement. In support of his argument, Murphy cites William R. Hubbell Steel Corp. v. Epperson, 679 So.2d 1131 (Ala.Civ.App.1996).
In Epperson, Temco Metals, Inc. (“Tem-co”), sought to purchase steel from William R. Hubbell Steel Corporation (“Hubbell Steel”). Bert Epperson, who at the time was the chairman of the board for Temco, was a personal friend of William R. Hub-bell, who was then the president of Hub-bell Steel. In April 1988, Epperson entered into an agreement with Hubbell to personally guarantee Temco’s steel purchase. Temco paid a deposit for the steel and, after the steel was delivered, paid the remaining balance owed to Hubbell Steel for the purchase. Temco did not purchase any additional steel from Hubbell Steel until 1992. In 1992, an employee of Temco placed an order for steel with Hubbell Steel; Epperson was not involved with the 1992 order. Hubbell Steel relied on the 1983 guarantee agreement when it advanced credit to Temco in 1992; however, no one from Hubbell Steel contacted Ep-person, who remained a principal at Tem-co, regarding the 1983 guarantee agreement. Temco failed to pay Hubbell Steel for the 1992 order, and Hubbell Steel sought to enforce the 1983 guarantee agreement against Epperson. The trial court determined that Epperson was not liable to Hubbell Steel for the 1992 order under the 1983 guarantee agreement. Ep-person, 679 So.2d at 1132-33.
This court affirmed the trial court’s judgment, agreeing with the trial court’s determination “ ‘that it would not be reasonable for Epperson to remain liable for Temco’s debts over nine years after he executed the guaranty agreement’ ” Id. at 1133. This court stated that the general principles of law that applied to the case were:
“(1) when there is no fixed time for performance stated in a contract, the law presumes that a ‘reasonable time’ was intended, Restatement (Second) of Contracts § 33; (2) a guaranty, as other contracts, is complete when the minds of the parties to the guaranty meet in mutual assent, Barnett Bank [of Pensacola v. Marable ], 385 So.2d 66 [ (Ala.Civ.App.1980) ]; and (3) when there is a continuing guaranty, which is unlimited in duration, the period of time for which it is valid must be reasonable, in light of the circumstances of the particular case. Mamerow [v. National Lead Co.], 206 Ill. 626, 69 N.E. 504 [ (1903) ].”
Id. This case, however, is distinguishable from Epperson.
In Epperson, Epperson signed an agreement to guarantee Temco’s purchase of steel from Hubbell Steel. Although the guarantee agreement had no expiration date, it was designed to guarantee payment of a specific transaction — the August 1983 purchase. After the August 1983 purchase, Temco had no business relationship with Hubbell Steel for nine years. In this case, like in Epperson, the indemnity agreement had no specific expiration date; however, unlike in Epperson, Circle M had an ongoing, continuous business relationship with Platte River. The indemnity agreement entered into by Murphy was designed to indemnify Platte River if it had to fulfill its obligation under the gasoline-tax bond, which bond continued in force from its inception date in 1995 until after it paid the department for Circle M’s unpaid gasoline taxes in 2003. Thus, in this case there is no gap in the business relationship between Circle M and Platte River as there was in the business rela *803 tionship between Temco and Hubbell Steel in Epperson.
Additionally, the guarantee in Epperson was entered into in order to guarantee a discrete transaction. Hubbell Steel’s attempt to enforce the guarantee was based on a separate, much-later discrete transaction. In this case, there was only one object of the indemnity agreement — the gasoline-tax bond, which continued without interruption. Unlike the facts in Epper-son, it is not unreasonable for the term of the indemnity agreement to match the term of the gasoline-tax bond. Thus, Ep-person does not mandate an affirmance of the trial court’s judgment. Given the continuous business relationship between Circle M and Platte River and the connection between the indemnity agreement and the gasoline-tax bond, which remained extant, the length of the indemnity agreement was not unreasonable, and, thus, it is not unreasonable to obligate Murphy to fulfill the terms of the indemnity agreement.
Murphy also argues that he should not be bound to the terms of the indemnity agreement because he was no longer an officer of Circle M when the events occurred that required Platte River to fulfill its obligation under the gasoline-tax bond. However, the Alabama Supreme Court has held that an individual’s disassoeiation with a corporation is insufficient, on its own, to release the individual from an agreement to guarantee the debts of the corporation. See Sharer v. Bend Millwork Sys., Inc., 600 So.2d 223, 227 (Ala.1992). Therefore, the fact that Murphy had resigned from Circle M, standing on its own, is insufficient to release him from his obligations under the indemnity agreement.
Because the plain, unambiguous terms of the indemnity agreement obligate Murphy to indemnify Platte River for its payment of Circle M’s unpaid gasoline taxes pursuant to the gasoline-tax bond, and because it is not unreasonable under the facts of this case to bind Murphy to the terms of the indemnity agreement, we reverse the judgment of the trial court and remand the cause to that court for it to enter a judgment in favor of Platte River.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. The indemnitors agreed to bind “themselves, their heirs, executors, administrators, successors, subsidiaries, and assigns, jointly and severally.”