KENNEDY, Justice.
These appeals arise from a contract to install a sewer system for the Town of Phil Campbell.
The facts are as follows: In 1987, the Town of Phil Campbell (“Town”), having no sewerage facilities except septic tanks, hired an engineering firm to design a sewage collection system to service the Town and connect each residence to a sewage treatment plant.
The sewage collection system was designed to serve approximately 600 customers. Of that number, nearly half were to be connected to a conventional or gravity system (whereby wastewater flows by gravity from the residence all the way to the sewage treatment plant). However, 334 customers were to be served by a “low-pressure” system (whereby wastewater is collected in a tank and forced under pressure to a point where it can flow by gravity to the treatment plant). This low-pressure system was needed in order to service residences in hilly areas and because of the long distances between the residences. Most of the issues in this case involve the installation and maintenance of the low-pressure system.
As the low-pressure system was originally designed, a pump unit would be attached to the existing septic tank. Later, the defendant, the Water and Sewer Board (“Sewer Board”) abandoned the idea of at *858 taching the pump unit to the septic tank, and, instead, decided that a new holding tank with a pump unit located on the inside of the tank would be installed at each residence. This new tank would then be attached to the sewer line already in place between the residence and septic tank. After approving the final design of the system, the Sewer Board requested bids on the contract to construct the sewage collection system.
After successfully bidding on the contract, the plaintiff, Roland Pugh Construction Company (“Pugh”) signed the contract with the Sewer Board and the Town on June 23, 1987.
When Pugh began to install the new tank for the low-pressure system, problems arose. As stated earlier, the new tank was to be connected with the sewer line in place between the residence and the septic tank. However, the new tank could not simply be attached to the existing sewer line, for several reasons. Those reasons included inconvenience to Pugh and the desires of the property owners, such as: (1) there would be no way to continue customer service while installing the new tank, which took several days, (2) the property owners wanted to have input into where the new tank was to be located, (3) structures (e.g., patios and decks) and other improvements (e.g., flower beds) were in the way, and (4) at several residences, the old septic tank was so close to the residence that the new tank could not be attached to the existing sewer line. Since the new tank was not being attached directly to the sewer line between the residence and the septic tank, it was necessary to install a polyvinyl chloride pipeline to connect the new tank with the sewer line.
After installing the new pipeline, Pugh submitted a “change order” to the Sewer Board. A change order was the formal mechanism that enabled the original contract to be altered to include tasks not covered in the contract. However, the original contract stated that the change order must be approved before the work was begun. Pugh submitted the change order, which contained the claim for $71,-143.49, which was the cost of the new pipes, services, and other materials related to the installation of the new pipeline. That change order was not approved by the Sewage Board. Pugh claimed that the mayor of Phil Campbell orally authorized the installation of the new pipeline and that, therefore, the change order should be approved.
Pugh then sued the Sewer Board and the mayor, alleging breach of contract. The Sewer Board and the mayor denied the claim and counterclaimed, alleging breach of contract because of alleged defects in the sewerage system and alleging fraud.
After a nonjury trial, the court found for the Sewer Board and the mayor on Pugh’s claims and found for Pugh on the mayor and the Sewer Board’s claims.
Where evidence is presented ore tenus, the trial court’s findings will not be disturbed on appeal unless they are plainly and palpably erroneous or manifestly unjust. Malcom v. Wilson, 534 So.2d 241 (Ala.1988). The trial court hears and observes the witnesses and is therefore in a better position than we are to evaluate the testimony. Id. “Where a trial court does not make specific findings of fact, the reviewing appellate court will assume that the trial court made those findings that are necessary to support its judgment, unless those findings are clearly erroneous or against the great weight of the evidence.” Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538, 545 (Ala.1988), citing Davis v. Weatherington, 514 So.2d 943 (Ala.1987).
The record shows many inconsistencies and conflicts in the testimony presented concerning the contract and the alleged defects in the sewerage system. We have carefully reviewed the record, and we find that the judgment of the trial court is supported by the evidence and, thus, is not clearly erroneous or manifestly unjust. We affirm.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and INGRAM, JJ., concur.